**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-31012
_____

BRANDON HAYNES,

Petitioner - Appellee,

versus

BURL CAIN, Warden Louisiana State Penitentiary

Respondent - Appellant.

Appeal from the United States District Court
For the Western District of Louisiana

July 12, 2002

Before KING, Chief Judge, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, DENNIS, and CLEMENT, Circuit Judges.[*]

EMILIO M. GARZA, Circuit Judge:

Burl Cain, the warden of the Louisiana State Penitentiary (the "Warden"), appeals the district court's grant of a writ of habeas corpus to Brandon Haynes pursuant to 28 U.S.C. § 2254 on his Sixth Amendment ineffective assistance of counsel claim. A panel of this court, analyzing Haynes'

_____

[*]Because of his illness and subsequent death, Judge Henry A. Politz, a member of the panel, did not participate in the en banc court.

habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1269, affirmed the district court's ruling. The panel majority held that Haynes' counsels' decision to concede guilt on the lesser-included offense of second degree murder in a capital murder case amounted to a constructive denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). We granted rehearing en banc, thereby vacating the panel opinion. *See* FIFTH CIR. R. 41.3.

Subsequently, the Supreme Court clarified the scope of the second *Cronic* exception to *Strickland* in *Bell v. Cone*, 122 S. Ct. 1843, 1850 (2002). In *Bell*, the Court reaffirmed that *Cronic* applies in those cases in which defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Bell*, 122 S. Ct. at 1851 (quoting *Cronic*, 466 U.S. at 659). More importantly, it clarified that an attorney's failure must be complete, noting that the difference between the situations addressed by *Strickland* and *Cronic* is "not of degree but of kind." *Id.* We now must determine whether the Louisiana state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984) in this case was contrary to, or involved an unreasonable application of, clearly established federal law. In order to do so, we must decide whether Haynes' attorneys' decision to partially concede guilt resulted in a constructive denial of counsel under *Cronic,* or whether it was a valid trial strategy, which we review under the usual test for constitutionally adequate assistance of counsel articulated by the Supreme Court in *Strickland*.

**I**

In October of 1993, Haynes was employed on a construction project at the Louisiana State University Biomedical Center in Shreveport, Louisiana. Around midnight on October 27, 1993, Haynes entered the LSU Medical Center, which was located next to the construction site. While

-2-

walking through the Medical Center, Haynes encountered a female graduate student, Fang Yang, who was conducting research in one of the Medical Center's laboratories. Haynes forcibly took Yang to the roof of the building where he proceeded to rape and rob her. At some point during the rape and robbery, Yang either fell or was thrown off the roof of the ten-story building. Construction workers discovered her body the following morning. An autopsy revealed that Yang had died as a result of injuries from the fall. The autopsy also found several non-fatal cuts on Yang's body, which the medical examiner believed were compliance or torture wounds, as well as semen residue in Yang's vagina and rectum.

Police subsequently identified Haynes as a suspect based on video surveillance tapes showing Haynes on the upper floors of the Medical Center turning off other surveillance cameras on the night of the attack, as well as an eyewitness who confirmed that Haynes was in fact in the building on the night Yang was killed. Haynes was arrested and indicted for first degree murder.

The evidence establishing Haynes' involvement in the abduction and killing of Yang was substantial. In addition to the video surveillance tapes and an eyewitness placing Haynes in the Medical Center on the night of the crime, police found human blood in Haynes' car and on his pants. They also recovered Yang's wallet, which Haynes had hidden in the wall of his home. Moreover, DNA analysis established that it was Haynes' semen that was found in the victim.

At trial, the prosecution theorized that Haynes had intentionally killed Yang during the course of her rape and armed robbery.[1] Haynes' two attorneys' strategy aimed solely at avoiding a first degree murder conviction and with it the possibility of the death penalty. Defense counsel conceded

---

[1]Under Louisiana law, first-degree murder requires proof of a "specific intent to kill or to inflict great bodily harm" during the course of an enumerated offense. *See* LA. R.S. 14:30A(1). The enumerated offenses include second degree kidnaping, aggravated rape, and armed robbery.

that the evidence established that Haynes kidnaped, raped, and robbed Yang, but argued that it did

not establish that Haynes intentionally killed her. Thus, according to defense counsel, Haynes only

could be convicted for second degree murder.[2]

Pursuant to this strategy, Haynes' counsel, during his opening statement, began by telling the

jury that he would be "up front" with them. He conceded that Haynes kidnaped, raped, and robbed

Yang and that the victim perished shortly after these offenses occurred. He then contrasted the

overwhelming evidence establishing these facts with the paucity of evidence regarding Haynes'

specific intent to kill Yang.

Following the defense's opening statement, Haynes addressed the court outside the presence

of the jury. Haynes objected to his attorneys' concessions and stated that he was innocent. Haynes

further stated that he specifically requested that his attorneys not make any concessions regarding his

guilt for the commission of the offense. Haynes also asked the court to appoint new attorneys. The

state trial court denied his request, assuring him that he had excellent lawyers and could testify if he

wished.

The jury found Haynes guilty of first degree murder, but could not agree on an appropriate

punishment. The trial court therefore sentenced Haynes to life imprisonment without the possibility

of parole. *See* LA. CODE CRIM. P. art. 905.8.[3] The Louisiana appellate and supreme courts

---

[2]Under Louisiana law, second degree murder applies where a person dies during the course of an enumerated offense, but the defendant lacks the specific intent to kill the victim. *See* LA. R.S. 14:30A(2).

[3]LA. CODE CRIM. P. art. 905.8 provides:
> The court shall sentence the defendant in accordance with the determination of the jury. If t he jury is unable to unanimously agree on a determination, the court shall impose a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.

subsequently upheld Haynes' conviction on direct appeal.

Haynes then sought state post-conviction relief, alleging that he had received ineffective assistance of counsel at trial because of his counsels' unauthorized concessions of partial guilt. The Louisiana Court of Appeal, applying *Strickland*, denied relief upon finding that defense counsels' partial concessions were part of a valid trial strategy which succeeded in avoiding the death penalty. *See State v. Haynes*, 662 So.2d 849, 852-53 (La. Ct. App. 1995).[4]

Haynes then filed a federal habeas petition, renewing his ineffective assistance of counsel claim. The district court granted Haynes' habeas petition, concluding that the state court had applied the incorrect legal standard in evaluating Haynes' claim. Specifically, the district court held that Haynes' attorneys' partial concession of guilt without Haynes' consent constituted a constructive denial of counsel. Relying on *Cronic*, the court held that Haynes was not required to show that his attorneys' concessions actually prejudiced him, as required by *Strickland*. In reaching its decision, the district court did not discuss or apply AEDPA's deferential scheme. The panel majority affirmed the district court's decision.

## II

The Warden maintains that the district court and the panel majority erred in granting federal habeas relief because the state habeas court's decision was not contrary to, or an unreasonable application of, clearly established federal law. In response, Haynes asserts that the state habeas

LA. CODE CRIM. P. art. 905.8.

[4]Haynes did not initially seek relief in the Louisiana Supreme Court. The federal district court dismissed his initial § 2254 habeas petition without prejudice for failure to exhaust state law remedies on his ineffective assistance of counsel claim. The Louisiana Supreme Court denied Haynes' petition for a writ of certiorari and/or review. *In re Haynes*, 667 So.2d 1070 (La. 1996). Haynes then filed the instant federal petition.

court's decision was contrary to clearly established federal law because the state court applied the wrong legal standard. Specifically, Haynes maintains that the state court should have evaluated his ineffective assistance of counsel claim under *Cronic* instead of *Strickland*. Thus, according to Haynes, the district court properly granted habeas relief.

Because Haynes filed his habeas petition on July 12, 1999, our review is governed by AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Under AEDPA, we must defer to the state habeas court unless its decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[5] Because the district court failed to conduct its review under AEDPA, instead applying the Supreme Court's precedent *de novo*, it violated AEDPA's dictate that federal district courts should defer to state habeas court decisions unless their adjudication is either "contrary to," or an "unreasonable application" of, clearly established Supreme Court precedent.[6] *Williams v. Taylor*, 529

---

[5]28 U.S.C. § 2254 provides:
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

28 U.S.C. § 2254(d)(1).

[6]The dissent does likewise. It contends that this case is controlled by the Supreme Court's decision in *Faretta*. The dissent does not address or attempt to distinguish *Bell*. In fact, the dissent concedes that *Cronic* is inapplicable and Haynes' attorneys' conduct was not deficient under *Strickland*. The dissent finds a constitutional violation because Haynes' attorneys conceded a lesser included offense, but it ignores that basic distinction between conceding the only factual issues in dispute and acknowledging that the evidence establishing a lesser included offense is overwhelming that is at the core of the *Strickland* / *Cronic* distinction in this context. *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991) (Posner, J.) (stating that "if his lawyer told the jury in closing argument, 'my client has decided to plead guilty,' that would be a forced plea . . . it is otherwise if in closing

-6-

U.S. 362, 404-405 (2000). The "contrary to" and the "unreasonable application" clauses in § 2254(d) have independent meaning. *Id*. A federal habeas court may issue a writ under the "contrary to" clause "if the state court applies a rule different from the governing law set forth in the [Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." *Bell*, 121 S. Ct. at 1850. Under the "unreasonable application" clause, a federal habeas court may grant a habeas writ if "the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Id*.

The Supreme Court in *Bell* analyzed a similar case under AEDPA's "contrary to" clause in which the petitioner argued that *Cronic* applied because defense counsel entirely failed to submit the prosecution's case to meaningful adversarial testing. *Id.* Ordinarily, to prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy *Strickland*'s familiar two-part test. *Strickland*, 466 U.S. at 700. First, "a defendant must demonstrate that 'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 688). When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Second, if counsel

argument counsel acknowledges what the course of the trial has made undeniable–that on a particular count the evidence of guilt is overwhelming"). Moreover, the dissent fails to accord the state habeas court's decision the proper AEDPA deference compelled by the dissent's concessions. AEDPA's deferential scheme is the touchstone for federal habeas review, giving "effect to state convictions to the extent possible under the law." *Williams*, 529 U.S. at 404. Circumventing this scheme and essentially retrying a state decision on federal habeas review is contrary to Congress's intent to limit the role of the federal courts in this area.

was deficient, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The Supreme Court's decision in *Cronic* created a very limited exception to the application of *Strickland*'s two-part test in situations that "are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified." *Cronic*, 466 U.S. at 658. The Supreme Court has identified three situations implicating the right to counsel where the Court will presume that the petitioner has been prejudiced. *Bell*, 2002 WL 1050365, at *7. First are situations in which a petitioner is denied counsel at a critical stage of a criminal proceeding. *Bell*, 121 S. Ct. at 1851 (quoting *Cronic*, 466 U.S. at 659). Second, and most relevant here, are situations in which a petitioner is represented by counsel at trial, but his or her counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*. Finally, prejudice is presumed when the circumstances surrounding a trial prevent a petitioner's attorney from rendering effective assistance of counsel. *Id.* (citing *Powell v. Alabama*, 287 U.S. 45, 57-58 (1932)).

Haynes argues that the second exception applies in this instance and therefore he is relieved from establishing prejudice. Specifically, he contends that his counsel failed to subject the prosecution's case to meaningful adversarial testing on the individual elements constituting the lesser-included offense of second degree murder. In *Bell*, the Supreme Court clarified when an attorney's failure to subject the prosecution's case to meaningful adversarial testing results in a constructive denial of counsel. The Court, reiterating language in *Cronic*, stated that an attorney must "*entirely* fail[] to subject the prosecution's case to meaningful adversarial testing" for the presumption of prejudice to apply. *Bell*, 121 S. Ct. at 1851 (quoting *Cronic*, 466 U.S. at 659) (emphasis in original).

In other words, an attorney must completely fail to challenge the prosecution's case, not just individual elements of it. *Id*. Critically for purposes of this appeal, the Court further noted that when applying *Strickland* or *Cronic,* the distinction between counsel's failure to oppose the prosecution entirely and the failure of counsel to do so at specific points during the trial is a "difference . . . not of degree but of kind." *Id.* Under this rationale, when counsel fails to oppose the prosecution's case at specific points or concedes certain elements of a case to focus on others, he has made a tactical decision. *Id*. at 1851-52. By making such choices, defense counsel has not abandoned his or her client by entirely failing to challenge the prosecution's case. Such strategic decisions do not result in an abandonment of counsel, as when an attorney completely fails to challenge the prosecution's case. Under the Court's reasoning, then, *Cronic* is reserved only for those extreme cases in which counsel fails to present any defense. We presume prejudice in such cases because it is as if the defendant had no representation at all. In contrast, strategic or tactical decisions are evaluated under *Strickland*'s traditional two-pronged test for deficiency and prejudice.

Previous circuit court decisions have elaborated on this distinction between ineffective assistance of counsel and the constructive denial of counsel. Collectively, these decisions reinforce the notion that defense counsel must *entirely* fail to subject the prosecution's case to meaningful adversarial testing for the *Cronic* exception to apply. *Gochicoa v. Johnson*, 238 F.3d 278, 285 (5th Cir. 2000) (holding that "[w]hen the defendant receives at least some meaningful assistance, he must prove prejudice in order to obtain relief for ineffective assistance of counsel" (quoting *Goodwin v. Johnson*, 132 F.3d 162, 176 n. 10 (5th Cir. 1997)). Thus, when analyzing an attorney's decision regarding concession of guilt at trial, courts have found a constructive denial of counsel only in those instances where a defendant's attorney concedes the only factual issues in dispute. *See United States*

*v. Swanson,* 943 F.2d 1070, 1074 (9th Cir. 1991) (holding that "[a] lawyer who informs the jury that it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute has utterly failed to subject the prosecution's case to meaningful adversarial testing"). In contrast, those courts that have confronted situations in which defense counsel concedes the defendant's guilt for only lesser-included offenses have consistently found these partial concessions to be tactical decisions, and not a denial of the right to counsel.[7]  As such, they have analyzed them under the two-part *Strickland* test.

In the instant case, Haynes' defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.  Rather, Haynes' attorneys acknowledged that the prosecution's evidence establishing that Haynes raped and robbed Yang was overwhelming.  After making this specific concession, however, Haynes' attorneys remained active at trial, probing weaknesses in the prosecution's case on the issue of intent.  They cross-examined state witnesses to emphasize that Yang wore thick glasses which were never located and that the victim landed face down when she fell, supporting their theory that she may have accidentally fallen when trying to flee from Haynes.  They also elicited testimony that Yang's pants were only "slightly" pulled down in an attempt to show that she could have run off the roof under her own power.  Defense counsel hoped

_____

[7]*See United States v. Short*, 181 F.3d 620, 624-5 (5th Cir. 1999) (holding that counsel's statements, which did not admit guilt, but which implicated the defendant, were reasonable in light of the overwhelming evidence presented at trial); *Lingar v. Bowersox*, 176 F.3d 453, 458 (8th Cir. 1999) (stating that " the decision to concede guilt of the lesser charge of second-degree murder was a reasonable tactical retreat rather than a complete surrender"); *Underwood v. Clark*, 939 F.2d at 474 (concluding that defense counsel's concession during closing arguments of a lesser included offense was "a sound tactic when the evidence is indeed overwhelming . . . and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury"); *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) (finding that McNeal's attorney's statements conceding manslaughter during a murder trial were tactical and strategic and did not constitute a forced guilty plea).

that this strategy would de-emphasize the graphic nature of the crime and would focus the jury's attention on the one area where the prosecution's case was not exceedingly strong.

In sum, this is not a situation in which Haynes' attorneys abandoned their client. Instead, they continued to represent him throughout the course of the trial, adopting a strategy which in their judgment accorded Haynes the best opportunity for a favorable outcome. Ultimately, their strategy proved effective in avoiding the death penalty for their client. As the Supreme Court indicated in *Bell*, when defense counsel pursue a strategy, even if it involves conceding certain elements or remaining inactive at specific points during the trial, we will examine the effectiveness of their performance and the propriety of their decisions under *Strickland*. *Bell*, 121 S. Ct. at 1851-52. Thus, we hold that the Louisiana state court properly identified *Strickland* as the correct governing legal principle under which to evaluate Haynes' ineffective assistance of counsel claim. The state court's adjudication of Haynes' habeas petition, therefore, was not contrary to clearly established federal law.

### III

Having concluded that the state habeas court evaluated Haynes' claim under the correct legal standard, the sole remaining issue is whether the state court's adjudication of Haynes' claim under *Strickland* involved an "unreasonable application" of that standard to the facts of this case. Because we are reviewing this case under AEDPA's deferential scheme, Haynes must do more than merely show that the state habeas court incorrectly applied *Strickland* to this case. Rather, he must demonstrate that the Louisiana Court of Appeal applied *Strickland* in an objectively unreasonable manner. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 411.

Haynes' counsel faced the demanding task of defending a client who was accused of

committing a brutal and senseless crime. The prosecution had nearly conclusive proof that Haynes raped, robbed, and then murdered Yang. The prosecution had videotape of the defendant and eyewitness testimony both placing Haynes at the crime scene. DNA test results established that his semen was found in the victim. The police found a knife, which could have caused the cuts found on the victim, in Haynes' car. The police also located Yang's wallet in Haynes' home. Given the overwhelming evidence defense counsel faced, the Louisiana Court of Appeal was not unreasonable in concluding that the strategy ultimately adopted by Haynes' attorneys likely succeeded in obtaining the best possible outcome under the circumstances.

Nevertheless, it is plausible that the failure of Haynes' attorneys to obtain his consent might constitute deficient performance under *Strickland*. Even assuming, however, that Haynes has established deficient performance, he has failed to show prejudice. For Haynes to establish prejudice, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Based on the prosecution's nearly conclusive evidence that Haynes committed the offense in question, the Louisiana Court of Appeal properly concluded that Haynes had failed to establish that without the concession strategy, he would have been acquitted of first degree murder. Consequently, Haynes cannot show that the state habeas court's conclusion that he was not prejudiced by his attorneys' strategy was objectively unreasonable.

**IV**

We hold that the state court's decision applying *Strickland* to Haynes' ineffective assistance of counsel claim was not "contrary to" the governing law set forth by the Supreme Court for ineffective assistance of counsel cases. Moreover, we hold that the state court did not unreasonably

-12-

apply *Strickland* to the facts of this case.  Based on the foregoing reasons, we REVERSE the district

court's grant of a writ of habeas corpus to Haynes.

DENNIS, Circuit Judge, concurring:

In my judgment, the majority correctly concludes that Haynes's defense counsel did not "entirely fail[] to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984). Defense counsel, in my opinion, subjected the prosecution's first degree murder case to meaningful adversarial testing by attempting to establish a defense of lack of intent through cross-examination and examination of witnesses and argument. Thus, the adversarial process protected by the Sixth Amendment, as described in *Cronic*, was preserved. The accused had "counsel acting in the role of an advocate." *Cronic*, 466 U.S. at 656 (citation and footnote omitted). Defense counsel "require[d] the prosecution's case to survive the crucible of meaningful adversarial testing," *id.*, on the question of first or second degree murder and, more important, caused it to fail that testing on the question of a life or a death sentence. The constitutional guarantee was not violated here, because "the process [did not] lose[] its character as a confrontation between adversaries."[8] *Id.* at 656-57.

---

[8] As the Court in *Cronic* explained, Even if defense counsel may have made demonstrable errors, "[w]hen a true adversarial criminal trial has been conducted...the kind of testing envisioned by the Sixth Amendment has occurred." 466 U.S. at 656. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *Id.* at 657 n.19.

I disagree, however, with the majority's perhaps unintentional implication that *Cronic*'s second "situation" of presumptive ineffectiveness applies only where the defense attorney completely fails to challenge the prosecution's case, that is, only when the attorney has totally abandoned his client, as if the defendant had no representation at all. Maj. Op. at 9. I believe the second *Cronic* exception applies, and prejudice is presumed, even when counsel makes some effort at a defense, if counsel makes no *meaningful* attempt to challenge the prosecution's case. For example, if the defense counsel represents his client at trial but, for no good reason, fails to cross-examine the only prosecution witness linking the defendant with the crime, he fails entirely to subject the prosecution's case to meaningful adversarial testing.[9] In my opinion, the broad and loose language in *Bell v. Cone*, 122 S.Ct. 1843 (2002), was not intended to alter the meaning of *Cronic*'s second situation. In *Cone* the Court dealt with defense counsel's failure to affirmatively defend by not adducing sufficient available mitigating evidence; this was not a per se dereliction such as failure to subject the prosecution's case to

---

[9] As an example of the second situation, the *Cronic* Court drew an analogy to judicial denial of the right of cross-examination, which had been held to constitute a Sixth Amendment violation without any showing to prejudice in *Davis v. Alaska*, 415 U.S. 308 (1974). See 3 Wayne R. LeFave, et al., *Criminal Procedure* § 11.7(d) n.45 (2d ed. 1999). "No specific showing of prejudice was required in [*Davis*] because the petitioner had been 'denied the right of effective cross-examination' which 'would be constitutional error of the first magnitude and no amount or want of prejudice would cure it.'" *Cronic,* 466 U.S. at 659 (citing *Davis* at 318).

meaningful adversarial testing. Moreover, we should keep in mind that the discussions of the per se prejudicial situations in both *Cronic* and *Cone* constituted dicta in those cases and were not intended as holdings or rigid rules absolutely governing future unforeseen cases.

On the other hand, I disagree with my dissenting colleagues, because I do not think that the defendant's Sixth Amendment claim of denial of the right of self-representation has been timely or properly raised. The right to self-representation announced in *Faretta v. California*, 422 U.S. 806 (1975), is subject to several limitations. "As the *Faretta* opinion recognized, the right to self-representation is not absolute. The defendant must 'voluntarily and intelligently' elect to conduct his own defense, and most courts require him to do so in a timely manner." *Martinez v. Court of Appeal of California*, 528 U.S. 152, 161-162 (2000)(citations omitted). After objecting to his defense counsel's strategy at the early stage of the trial, Haynes did not assert his right to self-representation or clearly call for the discharge of his attorneys. Consequently, the trial judge did not inquire into the voluntariness or intelligence of such a nonexistent claim. Subsequently, Haynes continued to allow the defense counsel to represent him, and he elected not to testify at trial or to further protest the trial strategy pursued. Under these circumstances, Haynes either waived his self-representation

claim or failed to properly raise and preserve it for our review. In either case, a reversal of his conviction on the theory that he has suffered a violation of his Sixth Amendment right to self-representation is unwarranted based on the record designated for our review.

ROBERT M. PARKER, Circuit Judge, joined by JACQUES L. WIENER, JR., and HAROLD R. DeMOSS, JR., dissenting from the en banc opinion:

The fundamental issue in this case is whether the Sixth Amendment and Due Process Clause of the Fourteenth Amendment give a defendant the right to require his appointed counsel to contest every charged crime when the defendant informs the judge and his appointed counsel that he is innocent and wants an "actual innocence" defense.[10] *Faretta v. California*, 422 U.S. 806 (1975) and *Brookhart v. Janis*, 384 U.S. 1 (1966) demonstrate that the accused himself, not his appointed lawyer, has the authority to decide whether his lawyer should concede guilt to a lesser charge. Because these two cases are clearly established law, the state court's application of the *Strickland* test misidentifies the correct governing legal principle, and is therefore "contrary to" clearly established federal law. I would therefore affirm the grant of the habeas writ.

## I. INITIAL OBSERVATIONS

My analysis of the trial court proceedings indicates the

---

[10] In using the term "actual innocence" defense, I mean a defense in which the defense attorney does not admit the defendant is guilty and holds the government to its burden of proof on each charged crime.

following.  First, the evidence of Haynes' guilt is overwhelming.

Second, Haynes' trial counsel were well-prepared and provided him

with a professional defense.  Third, trial counsel's decision to

concede guilt on the lesser charge of second degree murder in the

face of overwhelming evidence of guilt as to that charge was a

successful approach to take in that it spared Haynes the death

penalty.  Fourth, the outcome of the case (conviction for first

degree murder with a life sentence without possibility of parole)

was a reliable one based on the overwhelming evidence of the

defendant's guilt.

For these reasons, trial counsel's performance was not

deficient under *Strickland's* first prong and Haynes was certainly

not prejudiced by the trial counsel's approach under *Strickland's*

second prong.  On the contrary, trial counsel's tactic was probably

in Haynes' best interest.  Thus, applying strictly a *Strickland*

analysis, Haynes would not be entitled to habeas relief.[11]  However,

in my view, *Strickland* does not provide the appropriate framework

for analyzing this case.

---

[11] Because trial counsel did contest the first degree murder charge, the defendant was not completely denied assistance of counsel.  Therefore, I agree with the majority that the *Cronic* exception is not applicable to this case.  *See Bell*, 2002 WL 1050365 at *7 ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete").

## II.  THE MAJORITY'S ERROR

The majority opinion rests on the incorrect assumption that defendant's Sixth Amendment claim is controlled by *Strickland*.  It is not.  This case raises a much broader concern that goes to the very core of what the Sixth Amendment means and asks us to address important questions involving due process and the right to a fair trial.

It is undisputed that Haynes' defense counsel conceded Haynes' guilt as to the second degree murder charge during opening statements.  Subsequently, Haynes informed the trial judge that he wanted to address the court.  The judge then sent the jurors out, and Haynes' counsel stated that anything Haynes said was against the advice of counsel.  Haynes then unequivocally asserted:

> I don't agree with what these lawyers are doing, talking about I'm guilty of second degree murder.  I'm not guilty of second degree or first degree.  If that is the way they are going to represent me, they need to jump over there with the D.A.'s.  They ain't representing me.  Telling jurors that I'm guilty of second degree ain't trying to represent me in no kind of way.  I disagree with what they are doing.

If Haynes' own words do not constitute an explicit plea of actual innocence, no words ever will.  With all due respect to my learned colleagues in the majority, *Strickland* cannot possibly purport to control a situation in which defense counsel concedes the defendant's guilt as to second degree murder over the express

objection of the defendant when the record clearly and unambiguously shows that the defendant forcefully declared to the trial judge that he is innocent of all charged crimes and wants an "actual innocence" defense.

The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI. In *Faretta*, the Supreme Court recognized, in the context of examining a defendant's right to self-representation, that an accused's right to defend himself against the government is a personal right. This personal right is predicated on respect for the individual's liberty to make his own choices as to his defense for it is the individual himself who must bear the consequences of those choices. *Faretta*, 422 U.S. at 834.

Because the right to defend oneself is personal, trial counsel is only an "assistant" to the defendant and not the master of the defense. Consequently, the right to "assistance of counsel" necessarily entails that the defendant will be able to make certain fundamental decisions regarding his counsel's representation. One of those fundamental decisions must be whether to concede guilt as to a lesser charge. As Justice Brennan eloquently stated:

> *Faretta* establishes that the right to counsel is more than a right to have one's case presented competently and effectively. It is predicated on the view that the function of counsel under the Sixth Amendment is to

> protect the dignity and autonomy of a person
> on trial by assisting him in making choices
> that are his to make, not to make choices for
> him, although counsel may be better able to
> decide which tactics will be most effective
> for the defendant. *Jones v. Barnes*, 463 U.S.
> 745, 759 (1983) (BRENNAN, J., dissenting).

Of course, a defendant's right to make certain decisions concerning his own defense must be balanced against the realities of a trial. Oftentimes, counsel will have to make quick decisions during a trial that impact the defendant. Defendants should not be entitled to prevail on ineffective assistance of counsel claims merely because the defendant disagrees with minor tactical decisions made by his attorney. Admittedly, there may be some cases where the line between minor tactical decisions properly reserved to the attorney and fundamental decisions completely left to the defendant will be difficult to draw. This is not one of them.

The ultimate decision as to whether to plead guilty or not guilty is left to the defendant. *See Brookhart v. Janis*, 384 U.S. 1, 7 (1966); *Jones v. Barnes*, 463 U.S. at 751 (noting that the accused has the ultimate authority to decide whether to plead guilty). In the instant case, it is perfectly clear that (1) Haynes pleaded not guilty and consistently maintained his innocence; (2) Haynes communicated to both the trial judge and his lawyers that he was not guilty of any of the charged crimes and wanted his lawyers to represent him in a fashion that comported

with his contention; (3) the lawyers refused to mount a defense which contested both second degree and first degree murder; (4) the trial judge told Haynes that he was stuck with appointed counsel and their trial strategy regardless of what he wanted; and (5) trial counsel conceded Haynes' guilt as to second degree murder throughout the trial.

Trial counsel's concession as to Haynes' guilt on the second degree murder charge can only be described as the functional equivalent to a forced guilty plea over the objection of the defendant. *See State v. Carter*, 14 P.3d 1138, 1148 (Kan. 2000) (defense counsel's strategy of conceding felony murder in an attempt to prevent conviction of first degree murder even though the defendant maintained his innocence on all charged crimes was the functional equivalent to entering a guilty plea and violated both the Sixth Amendment and defendant's due process rights to a fair trial); *Nixon v. Singletary*, 758 So.2d 618, 625 (Fla. 2000)(counsel's comments conceding defendant's guilt were the functional equivalent of a guilty plea). In my view, *Faretta, Brookhart* and *Jones* clearly establish that the Sixth Amendment is violated when counsel concedes the accused's guilt as to a lesser crime over the accused's express objection.

In short, Haynes had the constitutional right to decide whether he wanted his counsel to concede guilt on a lesser charge. Haynes informed trial counsel that he wanted a defense that

contested both second degree and first degree murder. They refused to provide such a defense. As I see it, trial counsel did not have the authority to make that decision.

Because Haynes' lawyers refused to provide the "actual innocence" defense demanded by their client, the trial judge should have appointed new counsel who would follow Haynes' decision to contest all criminal charges. The failure to do so violated Haynes' constitutional rights. The state court's determination that Haynes' constitutional rights were not violated was contrary to clearly established federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

## III. FINAL THOUGHTS

Trial counsel's decision to concede Haynes' guilt on the second degree murder charge was probably a wise move. However, this point is absolutely irrelevant to the issue before us. The Constitution mandates that the decision to concede guilt on a lesser charge must be made by the accused, not his attorney, regardless of how difficult it may be for the attorney to mount a defense on all charges. *See Nixon v. Singletary*, 758 So.2d 618, 625 (Fla. 2000)("In every criminal case, a defense attorney can, at the very least, hold the State to its burden of proof by clearly articulating to the jury or fact-finder that the State must establish each element of the crime charged and that a conviction can only be based upon proof beyond a reasonable doubt"). No

trial can be considered constitutionally fair when an attorney is given the authority to override the accused's wishes to concede nothing and hold the government to its burden of proof on each criminal charge.

I dissent.