Hurley E. UNDERWOOD,
Petitioner–Appellant,

v.

Richard CLARK and Attorney General
of the State of Indiana,
Respondents–Appellees.

No. 90–2906.

United States Court of Appeals,
Seventh Circuit.

Argued July 9, 1991.

Decided Aug. 8, 1991.

Jay T. Hirschauer (argued), Logansport,
Ind., for petitioner-appellant.

David A. Nowak, David M. Wallman (argued), Kimberlie A. Forgey, Deputy Attys.
Gen., Indianapolis, Ind., for respondents-appellees.

Before CUMMINGS, POSNER and
FLAUM, Circuit Judges.

POSNER, Circuit Judge.

Hurley Underwood was convicted of criminal confinement with a deadly weapon and of attempted rape, and given concurrent prison terms of four and forty years, respectively. After the Indiana Supreme Court affirmed his conviction, *Underwood v. State*, 515 N.E.2d 503 (Ind.1987), he turned to the federal district court, which denied his application for habeas corpus.

A woman was jogging alongside a road outside of town. Underwood ran after her, grabbed her around the neck with one arm, and menaced her with a knife held in his other hand, saying, "You're coming with me now." He dragged her into the woods, threw her to the ground, and sat on her. She was struggling all the time. He stabbed her right hand, inflicting a severe wound, and punched her in the face, breaking several teeth. The struggle continued. He tried to pull down her shorts and she punched him in the groin, causing him to release her momentarily. She ran into the road and he fled to his car and drove off. A passing motorist, alerted by the victim, followed Underwood and got his license number. He was arrested and both the victim and the motorist identified him in lineups. Underwood did not testify at the trial or present any other evidence.

Underwood's lawyer conceded before the jury his client's guilt of criminal confinement with a deadly weapon, stating in closing argument: "You've heard that this woman was confined. I think the evidence establishes the commission of that offense.... Now plenty of evidence with regard to confinement with a deadly weapon ... but I'm looking for the specific attempt to commit sexual intercourse." The lawyer was trying to enhance his credibility with the jury by conceding his client's guilt of the offense of which the evidence was overwhelming, and to focus his efforts on the weakest link in the state's case, the charge that Underwood had attempted to have sex with his victim, an essential element, obviously, of attempted rape.

■ Underwood argues that it is ineffective assistance of counsel per se for a lawyer to concede his client's guilt without the client's consent. What is true, although it really has nothing to do with ineffective assistance, is that a defendant cannot be made to plead guilty against his wishes, however wise such a plea would be. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983). And if his lawyer told the jury in closing argument, "my client has decided to plead guilty," that would be a forced plea, and would deprive the defendant of his right to put the prosecution to its proof of guilt. *Byrd v. United States*, 342 F.2d 939, 941 (D.C.Cir.1965). It is otherwise if in closing argument counsel acknowledges what the course of the trial has made undeniable—that on a particular count the evidence of guilt is overwhelming. Such acknowledgment can be a sound tactic when the evidence is indeed overwhelming (and there is no reason to suppose that any juror doubts this) and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury. Such was this case. Given the protracted encounter between the defendant and his victim, the absence of any preexisting relationship that might have given her an incentive to lie, the ugly wounds, and the eyewitness testimony of a totally disinterested passer-by, there was no way in the world that the jury was going to acquit Underwood of criminal confinement with a deadly weapon. The lawyer did not plead Underwood guilty; he merely acknowledged the weight of the evidence of criminal confinement in order to contrast it with the lack of direct evidence of an intent by Underwood to have intercourse with the victim. The lawyer's tactic was reasonable, and though unlike *United States v. Simone*, 931 F.2d 1186, 1196–97 (7th Cir.1991), we cannot say that it had the consent of the client, a lawyer is not required to consult with his client on tactical moves. *United States v. Joshi*, 896 F.2d 1303, 1307–08 (11th Cir.1990).

■ Underwood next argues that his lawyer was (1) ineffective in counseling him not to testify, and (2) actually forbade him to testify and by doing so infringed his constitutional right to testify in his own

defense. The first argument has no merit. The lawyer's advice was sound, not only because any testimony that Underwood might have given would have been discredited on cross-examination—for when first arrested he had claimed not even to have been in the vicinity of the assault when it occurred—but also because his testimony would have been unbelievable even without being picked apart on cross-examination. Apparently he would have testified as follows. He showed up for work one day and found his boss murdered and a dog eating the man's brains. This experience made Underwood depressed, almost suicidal, and desperate to find a sympathetic person to talk to. Hence he accosted the victim, who far from proving sympathetic attacked him with his own knife; he inflicted the wounds on her in self-defense. No jury would believe such a story.

This discussion shows not only that the lawyer's advice was sound but also that, sound or unsound, it wasn't likely to change the outcome of the trial—in legalese, it was not "prejudicial." The evidence against Underwood was overwhelming and would not have been rebutted by Underwood's denials. This is so even with respect to the question whether he intended to rape the victim. For why else did he drag her into the woods, sit on her, and try to pull off her shorts? There is no suggestion that robbery was the motive for the assault; the inescapable inference is that rape was.

■ The more substantial issue relating to Underwood's not testifying is whether his lawyer did not merely counsel Underwood not to do so but forbade him. A criminal defendant has a constitutional right to testify in his own behalf; it is an aspect of his right to defend himself, a right held in *Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2709–10, 97 L.Ed.2d 37 (1987), to be implicit in the Fifth, Sixth, and Fourteenth Amendments. See also *Rogers–Bey v. Lane*, 896 F.2d 279, 283 (7th Cir.1990); *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir.1988). If that right is subject to harmless error, as held in *Ortega, id.* at 262, rejecting what might

have been thought contrary intimations in our earlier opinion in *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir.1984) (per curiam), its invocation by Underwood is doomed for the reasons just explained. The argument against is that there comes a point at which the desire to spare the courts superfluous proceedings because if conducted properly they can have but one result must yield to the right of an accused not to be condemned without some minimum forms of law. *Walberg v. Israel*, 766 F.2d 1071, 1074 (7th Cir.1985); *United States v. Velasquez*, 772 F.2d 1348, 1356 (7th Cir.1985); *Ferrier v. Duckworth*, 902 F.2d 545, 549 (7th Cir.1990). Otherwise, federal habeas corpus would not prevent a state from convicting and executing a clearly guilty capital offender without any trial at all. But Underwood would lose even if, contrary to *Ortega*, the right to speak in one's own defense were thought to be one of those basic forms to which a criminal defendant has a right that does not depend on a judgment that its exercise would make a difference to the trier of fact, as argued in *United States v. Martinez*, 883 F.2d 750, 759, 761–64 (9th Cir. 1989) (dissenting opinion), vacated on other grounds, 928 F.2d 1470 (1991); *Wright v. Estelle*, 572 F.2d 1071, 1081–92 (5th Cir. 1978) (dissenting opinion), and *United States v. Butts*, 630 F.Supp. 1145, 1148–49 (D.Maine 1986).

There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right that is not waivable by counsel) to testify in his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own

behalf. My attorney told me I could not testify."

■ We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim. The analogy is to the heightened pleading and substantiation required in certain civil rights cases. *Strauss v. City of Chicago*, 760 F.2d 765, 767–68 (7th Cir.1985); *Patton v. Przybylski*, 822 F.2d 697, 701 (7th Cir.1988); *Elliott v. Thomas*, 937 F.2d 338, 345 (7th Cir.1991); *Branch v. Tunnell*, 937 F.2d 1382, 1383–84 (9th Cir. 1991).

Some courts go further and insist in effect that the defendant have protested his lawyer's action to the judge during the trial. *United States v. Martinez, supra*, 883 F.2d at 760–61; *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir.1991). Silence is treated as waiver. (Silence might *be* waiver under state procedural law binding on the federal court, but that is a separate issue—and one not argued here— from what the state criminal defendant must plead and prove in a federal court to establish that his lawyer in fact forbade him to testify.) We hesitate to go quite so far, recognizing that the defendant might well feel too intimidated to speak out of turn in this fashion. At the same time we do not agree with those courts that require the judge to inquire of the defendant directly whether he wants to testify. *People v. Curtis*, 681 P.2d 504, 514–15 (Colo.1984); *State v. Neuman*, 371 S.E.2d 77, 81–82

(W.Va.1988); *Culberson v. State*, 412 So.2d 1184, 1186 (Miss.1982). That places the judge between the lawyer and his client and can produce confusion as well as delay. We are content to steer a middle course. The defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.

AFFIRMED.