**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 21, 2009[*]
Decided May 21, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-2780

| | |
|---|---|
| JERMAINE McFARLAND, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 07-C-1134 |
| | |
| JODINE DEPPISCH, | William C. Griesbach, |
| *Respondent-Appellee*. | *Judge*. |

**O R D E R**

Nearly ten years ago Illeana McNeal-Veasley was shot multiple times when she answered a knock at her door. She survived and identified Jermain McFarland as her attacker, an identification another eyewitness substantiated. A Wisconsin jury found McFarland guilty of reckless injury with a dangerous weapon, discharging a firearm into a

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

building, and possession of a firearm by a felon. The trial court sentenced McFarland, an habitual offender, to 37 years' imprisonment. After exhausting his state-court remedies, McFarland petitioned under 28 U.S.C. § 2254 for a writ of habeas corpus. The district court denied McFarland's petition but issued a certificate of appealability limited to his claim that trial counsel was constitutionally ineffective. We conclude that the district court properly rejected this claim and, accordingly, affirm the judgment.

Around 2:00 a.m. on October 10, 1999, a man knocked on the front door of McNeal-Veasley's apartment building and fired multiple gunshots through the door when she peered out to see who was there. McNeal-Veasley was shot several times, including in the head and neck, and was left permanently disabled. She was rushed to the hospital where, unable to speak, she scrawled the letter "J" on a piece of paper when asked who shot her.

At trial, McNeal-Veasley identified McFarland as "J," whom she knew as "J-Money." She testified that she was introduced to J-Money by his cousin, Rochelle Ray, about four months before the shooting. After they met she slept with J-Money in exchange for crack on a handful of occasions, but she had ended the relationship shortly before the shooting. When she was awakened by the knock on the door, she said, she asked who it was and a man replied, "It's J-Money." McNeal-Veasley descended the stairs from her apartment to the front door of the two-unit building and pulled the curtain aside from the window. Through the window she saw McFarland holding a gun. He then shot her. At that time McNeal-Veasley still did not know J-Money's real name, but she knew his sister's address and gave that information to police. Investigators linked the address to McFarland, whom McNeal-Veasley picked out of a photo array. At trial she testified that she had "no doubt" that McFarland was the man who shot her.

Jeremy Glosson, a neighbor, confirmed the identification. Glosson lived across the street from McNeal-Veasley and testified at trial that he was sitting on his porch and got a clear view of the shooting. About a week before the attack he had seen McFarland walking in the neighborhood with Rochelle Ray, but at the time he did not know McFarland's name. Glosson added that Ray later told him she knew the shooter's identity, and had boasted that McNeal-Veasley was shot for burglarizing her house and for giving McFarland a venereal disease. During the investigation Glosson too had selected McFarland's picture from a photo array, and at trial he confidently identified McFarland as the assailant.

McFarland testified in his own defense. He denied shooting McNeal-Veasley and insisted that he was at his sister's house babysitting that night. McFarland's sister, Malinda McFarland, and her friend, Sheila Redding, both offered alibi testimony. Malinda McFarland testified that she and Redding went to a movie with their dates while McFarland stayed home to watch her children. She said that she stopped at her house after the movie

to check on the kids and McFarland was still there.  She then went to a bar with her friends and did not return home until about 2:00 a.m.  McFarland, she said, was asleep on the couch.  Redding mostly confirmed this account, though she testified that they left the bar between midnight and 1:00 a.m.

The district court screened the § 2254 petition and allowed McFarland to proceed on two claims:  that Glosson's testimony about Ray's out-of-court statements violated the Sixth Amendment right to confrontation, and that trial counsel was ineffective because he did not block the admission of Ray's statements or use impeachment evidence more aggressively when cross-examining McNeal-Veasley and Glosson.  The district court agreed with the state, however, that McFarland had procedurally defaulted his ineffective-assistance claim to the extent that it rests on trial counsel's impeachment of McNeal-Veasley and Glosson. On the other hand, the district court rejected the state's insistence that the Wisconsin courts had correctly concluded that Ray's out-of-court statements were offered for a nonhearsay use that did not run afoul of the Confrontation Clause.  In the end, though, the district court accepted the state's contention that McFarland could not have been prejudiced by the admission of Ray's statements, or by counsel's failure to object on confrontation grounds, because the evidence of guilt was overwhelming.

On appeal McFarland tries to revive a number of the claims in his § 2254 petition, but our review is limited by the scope of the certificate of appealability, *see* 28 U.S.C. § 2253(c); *West v. Schneiter*, 485 F.3d 393, 394 (7th Cir. 2007); *Williams v. Parke*, 133 F.3d 971, 975 (7th Cir. 1997),  which we decline to expand, *see Watson v. Hulick*, 481 F.3d 537, 543 (7th Cir. 2007); *Rodriguez v. United States*, 286 F.3d 972, 978 (7th Cir. 2002).  We thus consider only the the ineffective assistance claim authorized by that certificate.  And as far as that claim, McFarland does not challenge in his opening brief the district court's conclusion that he procedurally defaulted his theory that counsel did not do enough to impeach McNeal-Veasley and Glosson.  That theory is, accordingly, waived, *see Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008), and all that remains is McFarland's contention that the district court wrongly rejected his theory that trial counsel rendered ineffective assistance by not stopping the admission of Ray's out-of-court statements.

For McFarland to prevail this theory, he must establish both (1) that counsel's performance was objectively unreasonable and (2) that he suffered prejudice as a result.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).  Like the district court, we may assume that Ray's statements should have been excluded as inadmissible hearsay, but McFarland's theory of ineffective assistance still must fail because he was not prejudiced by those statements.  We review the question of prejudice de novo because the Wisconsin courts never addressed this issue in denying state-postconviction relief.  *See* 28 U.S.C. § 2243, *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

McFarland was not prejudiced unless there is a reasonable probability that he would have been acquitted without the admission of Ray's out-of-court statements. *See Strickland*, 466 US. at 694; *Gross v. Knight*, 560 F.3d 668, 671 (7th Cir. 2009). But there is no chance that the outcome of this trial would have been different because the evidence against McFarland was overwhelming. Two eyewitnesses identified McFarland as the shooter; both witnesses knew him from the neighborhood, their stories matched up, and both had been able to identify him from a photo array before trial. *See Allen v. Chandler*, 555 F.3d 596, 602-03 (7th Cir. 2009) (explaining that state court had reasonably applied *Strickland* in holding that testimony of single eyewitness who had seen defendant on previous occasions constituted overwhelming evidence that rendered attorney's error not prejudicial); *Eckstein v. Kingston*, 460 F.3d 844, 849-50 (7th Cir. 2006) (explaining that state court had reasonably applied *Strickland* in holding that counsel's failure to impeach witness's credibility was not prejudicial where two recorded conversations irrefutably established that defendant had hired man to kill his wife). Indeed McNeal-Veasley had just ended a four-month relationship with McFarland, so there was little, if any, chance of misidentification. *See Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006) (explaining that state court had reasonably applied *Strickland in* holding that two eyewitness identifications, by individuals previously acquainted with the defendant, qualified as overwhelming evidence of guilt); *see also United States v. Recendiz*, 557 F.3d 511, 526 (7th Cir. 2009) (noting that prior association between witness and defendant was factor supporting reliability of witness's in-court identification); *compare United States v. Brown*, 471 F.3d 802, 804 (7th Cir. 2006) (observing that risk of misidentification is "uncomfortably high" if encounter involved a stranger and was brief). Thus, we cannot conclude that the admission of Ray's isolated statements prejudiced McFarland in any way.

Therefore, the district court properly denied McFarland's § 2254 petition, and the judgment is AFFIRMED.