FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9:56

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43789-9-II |
| Respondent, | |
| v. | |
| CARL DEMOND LEE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Carl Demond Lee appeals his jury trial convictions for two counts of second degree assault and one count of harassment. Lee argues that his trial counsel provided ineffective assistance of counsel in (1) failing to object to an officer's testimony about drugs the Seattle police found on Lee's person when they arrested him; (2) cross-examining the officer about what kind of drugs Lee was carrying when he was arrested; (3) failing to request a limiting instruction related to the drug evidence; (4) failing to move to strike, object, or offer a curative instruction related to an officer's testimony about the victim's statements concerning her fear of Lee and fear of retaliation; (5) failing to object to the victim's testimony about previous uncharged acts of violence; and (6) conceding guilt in closing argument. Lee also argues that cumulative ineffective assistance of counsel deprived him of his right to a fair trial. Because Lee either fails to establish deficient performance or fails to establish prejudice, we affirm.

FACTS

I. ASSAULTS AND HARASSMENT

In 2011, Erika Wolf and Lee had dated for about five years and had two children together. Although they did not live together, Lee often stayed overnight with Wolf and their children in their apartment.

On September 25, 2011, while staying with Wolf, Lee became angry with Wolf after she had admitted being unfaithful to Lee. When Lee announced, "'I have something on my mind and I'm not leaving until I get it off,'" Wolf realized that he intended to "beat [her] up really bad, or kill [her]" because he had "done it to [her] before." 1 Report of Proceedings (RP) at 120. Lee then told her that he was going to take her car "or something" to "get it off his mind," and left the apartment. 1 RP at 121. Wolf went into the bathroom, locked the door, and started to use the toilet; she then heard Lee come back inside the apartment.

Lee told her to open the bathroom door, but when she told him she was using the toilet, he kicked the door down and started to hit her. He slapped her several times, kicked her in the face several times, grabbed her, threw her into the shower, attempted to hit her with the shower curtain rod, and then started to choke her with both of his hands. He squeezed her throat hard enough that she could not breathe. While he was doing this, he called her a "bitch" and told her that he would have killed her if their children had not been there. 1 RP at 123. She believed him. Although Wolf did not lose consciousness, she was dizzy, her head was pounding, and her vision was blurry. After he stopped choking her, she somehow ended up back on the toilet, where he continued to slap and kick her. The incident woke their two-year-old son, who was in Wolf's bedroom. When she went to get her son, Lee left.

Wolf called her mother and told her to come over so she (Wolf) could go to the hospital. Wolf's stepfather called the police.

When the police arrived at her apartment, Wolf told them what had happened and they took photographs of her and of the bathroom. An ambulance took her to the hospital. One of the officers was with her at the hospital.

While at the hospital, Lee called Wolf on her cellular telephone and told her to go back to the apartment "because he was going to come back and beat [her] up again"; he also accused her of "being a snitch and calling the police." 1 RP at 136. Wolf put the call on speaker phone so the officer could hear it.

Two days later, Lakewood Police Officer Michelle Hector photographed Wolf's injuries. The left side of Wolf's face, including her eye, lip, and cheek, were still significantly bruised. Wolf also had two large bruises near her left hip, a scrape on her left knee, and a scrape on the inside of her left ankle.

A couple of weeks after the incident, but before his arrest, Lee called Wolf and left a voicemail message in which he threatened to harm her. Wolf let the police record this message.

The Lakewood police did not immediately locate Lee. After Wolf or her mother told Officer Hector that Lee was in Seattle selling crack cocaine, Officer Hector requested assistance locating Lee from other local law enforcement agencies. The Seattle police located and arrested Lee. At the time of arrest, Lee had a small amount of marijuana and two Vicodin pills in his pocket.

## II. PROCEDURE

### A. CHARGES AND PRETRIAL MOTION

The State charged Lee with (1) second degree assault by strangulation (domestic violence),[1] (2) second degree assault by reckless infliction of substantial bodily harm (domestic violence),[2] and (3) harassment by threat of bodily injury (domestic violence).[3] The State alleged several aggravating factors on both assault charges, including that Lee committed the offense in the presence of a minor child.[4]

Before trial, Lee moved to suppress the evidence that when he was arrested in Seattle, officers found a small amount of marijuana and "a couple pills" on his person. 1 RP at 17. The State did not object to this motion. The trial court granted the motion, excluding "any reference to marijuana or pills found in his possession when he was arrested." 1 RP at 17. The State's witnesses testified as described above. Lee did not present any evidence.

### B. DRUG POSSESSION EVIDENCE

During Officer Hector's testimony, the State questioned her about a fax she had sent to the Seattle Police Department after Lee's arrest. The State objected when, on cross-examination, defense counsel tried to introduce a sentence on the fax cover sheet in which Officer Hector said, "We really would like to hammer this guy with anything possible." 1 RP at 62.

---

[1] RCW 9A.36.021(1)(g); RCW 10.99.020.

[2] RCW 9A.36.021(1)(a); RCW 10.99.020.

[3] RCW 9A.46.020(1)(a)(i), (b); RCW 10.99.020.

[4] Former RCW 9.94A.535(3)(h)(ii) (2010).

Outside the jury's presence, defense counsel argued that this statement was evidence of Officer Hector's bias. The State questioned the statement's relevance and argued that if Lee was able to introduce the "hammer this guy" statement, the State should be able to introduce other portions of the fax to clarify why Officer Hector said this. Specifically, the State argued that it should be able to introduce the portion of the fax referring to allegations that Lee was "dealing crack" and that Lee may have possessed drugs at the time of his arrest. 1 RP at 62. Defense counsel responded that the admission of the drug evidence was improper given the trial court's earlier ruling excluding the drug evidence.

The trial court ruled that if Lee chose to question Officer Hector about the "hammer this guy" statement, the State "should be allowed to rehabilitate [Officer Hector] on the rest of the portions of the fax." 5 RP at 290. It stated that the entire fax would be admissible if Lee opened the door and that the evidence was not hearsay because it was not being offered for the truth of the matter but, rather, to explain why Officer Hector made the statement the defense introduced. The trial court also offered to give the jury a limiting instruction.

On cross-examination, defense counsel had Officer Hector read the "hammer this guy" statement in full, which stated, "I would like a copy of the arrest report, please, in order to see the details of the arrest and what officers arrested him, as we really would like to hammer this guy with anything possible." 5 RP at 295. On redirect, the State asked Officer Hector to read the entire page, which stated,

> "Subject: Carl Lee, . . . was arrested by Seattle [Police Department]. Subject was arrested this weekend on Washington's Most Wanted and victim's brother led police to his location. He was said to be dealing crack; however, no new charges were seen on the jail roster charges. I would like a copy of the arrest report, please, in order to see the details of the arrest and what officers arrested him, as we really would like to hammer this guy with anything possible. I'm not sure if

the possession of drugs was added by [the Department of Corrections] as a violation. Thank you."

5 RP at 297. Defense counsel then asked Officer Hector whether any of the Seattle police reports indicated that Lee was in fact selling crack cocaine. Officer Hector responded that they did not.

The State then asked Officer Hector whether any of the reports said that Lee possessed drugs when he was arrested. Defense counsel objected and moved for a mistrial. The trial court overruled the objection, and Officer Hector responded, "Yes." 5 RP at 303.

Defense counsel then questioned Officer Hector about what drugs the police reports mentioned, and Officer Hector confirmed that the reports mentioned 1.9 grams of marijuana and two Vicodin pills valued at $1. She also testified that the reports said nothing about Lee selling marijuana or pills and clarified that she had learned about the possible drug selling from Wolf or her mother.

The trial court excused the jury after this questioning, and defense counsel argued his mistrial motion. He argued that his questioning was about whether Lee had been selling crack cocaine and that the State went beyond the scope of that questioning by asking about evidence of "any drugs." 5 RP at 307. The State argued that Lee had opened the door by asking "about the absence of a reference to dealing crack cocaine" and asserted that the additional testimony was necessary to give a "complete picture" explaining Officer Hector's reference in the fax to some type of drug charge. 5 RP at 307. Agreeing that Lee had opened the door, the trial court denied Lee's mistrial motion. Defense counsel declined the trial court's offer to give a limiting instruction related to the drug evidence, stating,

> I don't believe one will solve the problem, Your Honor. So likely I'm not going to propose any limiting instruction because I don't know exactly why it was

6

admitted. That's for the Court to determine and the person offering it to suggest to the Court. I was that person.

5 RP at 310.

## C. WOLF'S FEAR

Officer Hector also testified that Wolf had said she was afraid of Lee and of Lee retaliating. Defense counsel objected to this testimony, but the trial court overruled the objection.[5]

## D. PREVIOUS, UNCHARGED ACTS OF VIOLENCE

Before Wolf testified, the State asked the trial court to determine the admissibility of Wolf's testimony about several previous, uncharged acts of violence Lee had committed against her. In an offer of proof, Wolf testified in detail about several incidents of violence by Lee in the five years before this incident. She testified about not only the violent acts, but where they occurred, what precipitated them, what Lee said to her before and during the assaults, and why she did not report these incidents to the police. The trial court ruled that the State could introduce evidence of these prior acts of violence, but it told the State that it needed to "keep[ ] it to general terms of describing those events." 1 RP at 105.

When Wolf testified, the State asked her if she believed that Lee would have "beat [her] up again" if she had returned to her apartment after Lee told her to do so while on the phone with her in the hospital. 1 RP at 137. Wolf responded that she believed he would hurt her again because of what he had just done.

The State then asked her if Lee had ever previously followed through on threats to "beat [her] up" in the past. 1 RP at 137. After Wolf responded that it had happened before, the State

---

[5] We set out this testimony and defense counsel's objection in more detail below.

7

asked her how Lee had harmed her before. Wolf responded that Lee had "[w]hipped [her] with a belt until [her] body was welted, slapped [her], choked [her], kicked [her], dragged [her] around by [her] hair," and had once kicked her in her side near her kidney. 1 RP at 137. She also testified that she did not call the police after these incidents because she loved him and was afraid that he would "beat [her] up." 1 RP at 138.

Defense counsel did not object to any of the testimony in which Wolf was describing how Lee had hurt her; he objected only after Wolf testified that she was afraid of Lee because she feared that he would "beat [her] up." 1 RP at 138. Outside the jury's presence, defense counsel stated,

> Your Honor, I've let the State get out a lot, voluminous testimony about prior instances. And I would object to any further reference to any prior instances. Certainly there's enough to establish any element of the crime that the State needs to establish at this point.

1 RP at 139. The State asked the trial court to allow Wolf's last answer to stand and stated it (the State) had not planned to ask Wolf any more questions about any previous incidents. Defense counsel noted that he had not asked the trial court to strike the last answer. The trial court sustained any objection to additional questions about the previous incidents.

### E. LEE'S CLOSING ARGUMENTS AND VERDICT

In Lee's closing argument, defense counsel argued,

> There's only a few issues in this case. It's not a who-done-it. The issues center on is what occurred on September 25, does it amount to an assault in the second degree or an assault in the fourth degree? Carl Lee struck Erika Wolf and inflicted the injuries that you saw. There is no dispute on that. . . . *Carl Lee threatened Erika Wolf and Erika Wolf had reason to believe that those threats could be carried out. There is no dispute on that. . . . Clearly, Carl Lee committed an assault 4 and there's no dispute on that.*
>
> . . . .
>
> So the State has charged Mr. Lee, however, with assault in the second degree. And thus that is where your deliberations need to focus. The elements

are in dispute -- that [sic] elements that are in dispute are, in Count I, whether or not the State has shown beyond a reasonable doubt that strangulation has occurred; and in Count II, whether or not the State has shown by proof beyond a reasonable doubt that there was substantial bodily harm. That's the focus.

5 RP at 371 (emphasis added). He further emphasized that the jury should focus on whether the State had proved the strangulation element on the first assault charge and the substantial bodily harm element on the second assault charge.

The jury convicted Lee of two counts of second degree assault-domestic violence, with the aggravating factor of his having committed the offenses with a minor child present and one count of harassment-domestic violence. Lee appeals his convictions.

## ANALYSIS

Lee argues that his trial counsel provided ineffective assistance of counsel in (1) failing to object to Officer Hector's testimony about the drugs the Seattle police found on Lee's person when they arrested him, despite the trial court's pretrial ruling suppressing the drug evidence; (2) cross-examining Officer Hector about what kind of drugs Lee was carrying when he was arrested; (3) failing to request a limiting instruction related to the drug evidence; (4) failing to move to strike, object, or offer a curative instruction related to Officer Hector's testimony about Wolf's statements concerning her fear of Lee and fear of retaliation; (5) failing to object to Wolf's testimony about the previous, uncharged acts of violence; and (6) conceding guilt in closing argument. He also argues that cumulative ineffective assistance of counsel deprived him of his right to a fair trial. We disagree.

### I. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD OF REVIEW

Counsel is presumed to have acted competently unless defendant shows otherwise. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011); *State v. Thomas*, 109 Wn.2d 222, 226, 743

9

P.2d 816 (1987). To succeed on an ineffective assistance of counsel claim, Lee must show that counsel's conduct was deficient and that the deficient performance was prejudicial. *Grier*, 171 Wn.2d at 33; *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If defense counsel's conduct can be characterized as reasonable, legitimate trial strategy or tactics, a claim of ineffective assistance fails. *Grier*, 171 Wn.2d at 33-34; *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).

To establish prejudice, Lee must demonstrate a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If the ineffective assistance claim fails on one prong, we do not address the other prong. *State v. Staten*, 60 Wn. App. 163, 171, 802 P.2d 1384, *review denied*, 117 Wn.2d 1011 (1991).

## II. OFFICER HECTOR'S DRUG TESTIMONY

### A. OFFICER HECTOR'S TESTIMONY ABOUT LEE'S DRUG POSSESSION

Lee first argues that defense counsel provided ineffective assistance in "fail[ing] to object to Officer Hector's testimony regarding the drug evidence that the Court had suppressed pretrial." Br. of Appellant at 20. Lee contends that this was not a legitimate trial strategy, that it was not objectively reasonable for defense counsel "to fail to object when Officer Hector testified as to her opinion that Mr. Lee was guilty of possession of drugs and probably guilty of the charged crimes."[6] Br. of Appellant at 20.

---

[6] To the extent this assertion also suggests that Lee is arguing that defense counsel should have objected to Officer Hector's testimony as opinion of guilt testimony, Lee fails to present any argument related to such a claim. Accordingly, we decline to determine whether this testimony amounted to opinion of guilt testimony. RAP 10.3(a)(6).

Despite Lee's current arguments, the record clearly shows that defense counsel objected to the admission of any drug evidence. The trial court overruled defense counsel's objections and allowed the State to question Officer Hector about the information in the fax cover sheet, which included that Officer Hector had information suggesting that Lee was selling crack cocaine and that Lee may have possessed drugs when he was arrested in Seattle. Because defense counsel objected, this ineffective assistance of counsel claim fails.[7]

B. DEFENSE COUNSEL'S CROSS-EXAMINATION OF OFFICER HECTOR

Lee next argues that defense counsel provided ineffective assistance in cross-examining Officer Hector about what kind of drugs the Seattle police found when they arrested Lee. He contends that this detailed evidence was unnecessary and that the inquiry was not a legitimate trial strategy.

Before defense counsel questioned Officer Hector about what drugs Lee was carrying when the Seattle police arrested him, the jury heard allegations that Lee was dealing crack cocaine and that he may have also violated his community custody by possessing drugs at the time of his arrest. Lee has failed to show it was an unreasonable tactical decision for defense counsel to question Officer Hector about what drugs Lee actually possessed in order to take the sting out of this evidence by establishing that Lee was not carrying any crack cocaine or any other drug in an amount that suggested he was dealing drugs. Accordingly, because Lee has failed to show that this was an unreasonable tactical decision, this ineffective assistance of counsel claim also fails.

---

[7] Lee does not challenge the trial court's ruling allowing this evidence and testimony on appeal. His arguments are presented solely as ineffective assistance of counsel claims.

### C. Failure To Request a Limiting Instruction

Lee next argues that defense counsel provided ineffective assistance in failing to request a limiting instruction related to the drug evidence. Again, we disagree.

The record suggests that defense counsel did not request a limiting instruction for two reasons: (1) he did not think that a limiting instruction would be effective, and (2) he did not understand why the trial court had admitted the evidence. Although defense counsel could have arguably asked the trial court to limit the drug evidence testimony to the purpose of showing Officer Hector's possible bias, we hold that any error in not requesting this instruction was harmless.

The evidence that Lee had assaulted and threatened Wolf was overwhelming. Given the minor nature of the drug evidence and the strength of the other evidence, we cannot say that Lee has demonstrated a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, this ineffective assistance of counsel claim also fails.

### III. Officer Hector's Testimony About Wolf's Statements

Lee next challenges defense counsel's failure to object and/or move to strike portions of the following testimony:

> Q[The State]. One last question, and I'm reaching far back in to Monday and the cross-exam of defense counsel, defense had asked you if Ms. Wolf appeared scared or afraid, in your opinion, and you had said yes. Did Ms. Wolf actually tell you that she was scared of Mr. Lee?
> A[Officer Hector]. Yeah, she did actually tell me --
> [DEFENSE COUNSEL]: Objection hearsay.
> [STATE]: Your Honor, under ER 803(a)(3), goes to her physical and emotional condition. It's not hearsay.
> THE COURT: I'll overrule the objection.
> A. *She did specifically tell me that she was scared of him and also mentioned that she was scared --*

12

> [DEFENSE COUNSEL]: Objection. Not responsive.
> THE COURT: Sustained.
> Q. (By [State]) *Did she say that she was scared of something else?*
> A. *Of retaliation.*

5 RP at 300-01 (emphasis added). Defense counsel did not ask the trial court to strike the "nonresponsive" answer, nor did he object to the State's next question as hearsay or seek to strike Wolf's answer to that question.

Lee now argues that defense counsel was ineffective for failing (1) to strike the nonresponsive answer, and (2) to object to the next question as hearsay and then move to strike that response. He contends that had the nonresponsive answer and the following question been stricken, the jury would not have heard any testimony corroborating "Wolf's testimony that she was afraid that Mr. Lee would kill or harm her." Br. of Appellant at 26. Again, we disagree.

First, as to the nonresponsive answer, only the second part of Officer Hector's response was nonresponsive. The only information in the nonresponsive portion of her testimony was that Wolf also mentioned something else she was afraid of. Because defense counsel objected, the potentially nonresponsive answer revealed very little and would not have been prejudicial. Furthermore, once the State rephrased the question, Officer Hector was able to testify about the previously nonresponsive statement in full.

Lee also challenges defense counsel's failure to object to the State's follow-up question and Officer Hector's response to that question. If a defendant's challenge to evidence's admissibility would have failed, a defendant cannot show that counsel was deficient for failing to object to that evidence. *State v. Nichols*, 161 Wn.2d 1, 14-15, 162 P.3d 1122 (2007). The trial court had already overruled Lee's hearsay objection to the immediately preceding testimony because that testimony was admissible as evidence of Wolf's then existing mental, emotional, or

13

physical condition under ER 803(a)(3). The State's next question was about the same contact and conversation with Wolf, so any potential hearsay would clearly fall under the same hearsay exception. It was not deficient performance for defense counsel not to object to this question and response. Accordingly, Lee again fails to establish deficient performance and this ineffective assistance of counsel claim also fails.

IV. FAILURE TO OBJECT TO WOLF'S TESTIMONY ABOUT PRIOR ACTS OF VIOLENCE

Lee next argues that defense counsel was ineffective in failing to object to Wolf's testimony describing how Lee had hurt her in the past when the trial court had ruled that only "generalized information about the prior incidents was admissible." Br. of Appellant at 28. Lee asserts that defense counsel should have objected to Wolf's testimony that Lee had "[w]hipped [her]with a belt until [her] body was welted, slapped [her], choked [her], kicked [her], [and] dragged [her] around by [her] hair," and that Lee had kicked her in her side, near her kidney. 1 RP at 137-38.

Following an offer of proof, the trial court had ruled that evidence of prior, uncharged acts of violence was admissible, but it told the State that it needed to "keep[ ] it to general terms of describing those prior events." 1 RP at 105. In her offer of proof, Wolf had described the details of several previous assaults by Lee. She not only testified about what Lee had done to her, but why Lee was assaulting her, where the assault took place, and other details. In contrast, Wolf's trial testimony was limited to the fact that he had harmed her and what acts he had done to her. Wolf's trial testimony was a much more "general" description of the various acts of violence Lee had committed against her than Wolf had testified to in her offer of proof. Defense counsel clearly believed that this was within the scope of testimony the trial court had allowed, and we hold that defense counsel's evaluation of the trial court's direction was reasonable and

14

did not amount to deficient performance. Accordingly, this ineffective assistance of counsel argument also fails.

## V. CONCEDING GUILT

Lee next argues that defense counsel provided ineffective assistance in conceding that Lee had committed harassment and that he had struck Wolf and was guilty of "second degree assault" by reckless infliction of substantial bodily harm. This argument also fails.

Lee misconstrues the record when he states that defense counsel conceded that he (Lee) was guilty of second degree assault by reckless infliction of substantial bodily harm. Counsel was arguing that Lee was, instead, guilty of the lesser included offense of fourth degree assault and that the State had failed to prove the charged second degree assault.

Furthermore, although entering a not guilty plea preserved Lee's right to a fair trial and his right to hold the State to its burden of proof, conceding guilt in closing argument on a particular count can be a sound trial tactic when the evidence on that count is overwhelming and when the count is a "lesser count" and there may be an advantage gained by winning the confidence of the jury. *State v. Silva*, 106 Wn. App. 586, 596, 24 P.3d 477, *review denied*, 145 Wn.2d 1012 (2001); *see also State v. Hermann*, 138 Wn. App. 596, 605, 158 P.3d 96 (2007) (Division Two case applying *Silva*). And "[a]n attorney need not consult with the client before making such a tactical move." *Silva*, 106 Wn. App. at 596 (citing *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)). Here, the evidence of the less serious fourth degree assaults and of the harassment was overwhelming and uncontradicted, and counsel conceded guilt as to these less serious charges. Under *Silva* and *Hermann*, this was a reasonable tactical decision, likely intended to gain credibility with the jury on the far more serious second degree assault charges.

15

No. 43789-9-II

Accordingly, Lee once again fails to establish deficient performance, and this ineffective assistance of counsel claim fails.

### VI. NO CUMULATIVE INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Lee argues that these alleged instances of ineffective assistance, taken together, cumulatively deprived him of a fair trial. Again, we disagree.

The cumulative effects of errors may require reversal, even if each error on its own would otherwise be considered harmless. *See State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). All but one of Lee's ineffective assistance of counsel claims fail because his counsel's representation was not deficient. The only claim that possibly shows deficient performance is trial counsel's failure to request a limiting instruction related to the specific drug evidence. Because this is the only possible error and we have already held that this error was harmless, Lee does not establish that cumulative error deprived him of a fair trial.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, C.J.

BJORGEN, J.

16