**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| THE STATE OF WASHINGTON, | No. 79109-5-I |
| Respondent, | |
| v. | DIVISION ONE |
| ANDREW ALLEN ECK, | UNPUBLISHED OPINION |
| Appellant. | FILED: February 18, 2020 |

PER CURIAM — Andrew Eck appeals his convictions for six misdemeanor counts of violating a court order. Eck argues he was denied effective assistance of counsel because his attorney conceded guilt as to these charges. Because defense counsel made a legitimate strategic choice that likely resulted in Eck's acquittal on more serious felony charges, we affirm.

## FACTS

Andrew Eck and Demetria Murphy are married with two children. They lived together until September 2017, when Murphy obtained a protection order prohibiting Eck from contacting her. Eck moved in with his sister but left most of his personal property at the couple's home.

On September 14, 2017, Murphy left for work and Eck came to get some of his possessions. Murphy returned while Eck was still at the home. Eck became upset, accusing her of having an affair. Eck punched several holes in the wall out of anger and Murphy left and got in her car. Eck began texting

Murphy, threatening to "burn [her] room down" if she did not provide the password to her bank account so he could investigate the alleged infidelity. A "big burst of flames" erupted from the bedroom. Investigators surveyed the fire damage and concluded that Eck poured fingernail polish remover on a bedside table and ignited it.

The State charged Eck with first degree arson and violating a court order. While awaiting trial, Eck made numerous phone calls to Murphy from jail. In some of the calls, Eck made statements suggesting Murphy should testify favorably on his behalf. The State charged Eck with five additional counts of violating a court order and one count of witness tampering.

In opening statement, defense counsel stated that Eck had been drinking and using drugs to cope with the recent death of his father and brother. Defense counsel conceded that Eck violated the no-contact order but argued that he did not maliciously start the fire:

> As far as the no[-]contact, Mr. Eck, when he first went into the jail, was still completely off his gourd and he's saying mean things to [Murphy]. When he got into jail and he started trying to talk to her, and realistically, he doesn't feel bad about talking to his wife. In his view, she is the only one who helps him keep on the path that he wants to be on now, which [is] a path where he[ ] starts trying to fix some things that he's done wrong. <u>And so we'll admit to those violations and he'll take responsibility for those violations</u>.

> . . . But he just wasn't trying to kill himself and he wasn't trying to burn down the house or burn down the room. He was trying to get attention, and he was trying to get attention from a person that he loves. So yes, this is a sad story and this is a sad story that ends with Mr. Eck needing to make substantial changes in his life and needing to deal with things that he hasn't dealt with in the past.

2

But it is not the story of an arsonist, and it is not a story of somebody who's controlling. <u>And we will ask at the end of this trial that you do find him guilty of a no-contact order violation. He admits to those.</u> But we will argue that there wasn't damage and there wasn't substantial damage to anything in the house that [Murphy] is still sleeping on the same mattress and everything was taken care of. And that as soon as he realized that there was a fire at all, it never was out of control. It was a second and it went out. We'll argue that this wasn't a malicious and intentional fire, and we believe at the end of this trial, you will find him not guilty of that part of the offense.

Prior to Murphy's testimony, Eck stipulated that he knew a court order prevented him from contacting her.

During closing argument, defense counsel acknowledged that the evidence clearly showed that Eck contacted Murphy in violation of the no-contact order.

As far as the violations of [the] no[-]contact order, yeah, he called her, there was a no[-]contact order. As I indicated before he doesn't really feel bad about it because he wanted to talk to his wife. And she testified that he called her; you heard the calls. There's nothing I can say about the fact that he made those calls. <u>We expect you to find him guilty of the violations of [the] no[-]contact order</u>.

The jury convicted Eck of the six counts of violating the no-contact order, but acquitted him of the two felony charges. Eck appeals.

## ANALYSIS

Eck argues he was denied effective assistance of counsel because his attorney conceded guilt as to the no-contact order violations. We disagree.

Whether counsel was ineffective is a question of law we review de novo. <u>In re Pers. Restraint of Brett</u>, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To show ineffective assistance of counsel, a defendant must show both deficient

3

performance and resulting prejudice. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's representation is deficient if it falls below an objective standard of reasonableness. State v. Stenson, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997). We do not consider an alleged deficiency in isolation, but rather within its surrounding context. State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). A strong presumption exists that counsel's performance was reasonable. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). A defendant is prejudiced if, but for the deficient performance, there is a reasonable probability the trial outcome would have been different. Stenson, 132 Wn.2d at 705-06.

If defense counsel's performance can be characterized as legitimate trial strategy or tactics, performance is not deficient. Grier, 171 Wn.2d at 33. Conceding guilt on a particular count can be a sound trial tactic when the evidence on that count is overwhelming. State v. Silva, 106 Wn. App. 586, 596, 24 P.3d 477 (2001). This approach may help win the jury's confidence and preserve the defendant's credibility when a more serious charge is at stake. State v. Hermann, 138 Wn. App. 596, 605, 158 P.3d 96 (2007); Silva, 106 Wn. App. at 597-98. Defense counsel is not required to consult with the client before making this strategic move. Silva, 106 Wn. App. at 596 (citing Underwood v. Clark, 939 F.2d 473, 474 (7th Cir. 1991)).

Here, defense counsel made a tactical decision to concede Eck's guilt as to the misdemeanor charges. The evidence that Eck repeatedly violated the no-

4

contact order was overwhelming. Eck sent threatening text messages to Murphy. The record also shows Eck's booking number was used to place calls from jail to Murphy. The telephone calls were recorded and played for the jury. Murphy testified at trial and identified Eck's voice on the recordings. During the calls, Eck and Murphy discussed details relevant to Eck's case. Defense counsel's decision to admit guilt as to the no-contact order violations was a legitimate strategy to support the defense theory of the case, gain the jury's sympathy, and preserve Eck's credibility as to the felony charges. Accordingly, Eck's ineffective assistance claim fails.[1]

We affirm.

FOR THE COURT: _____

_____

_____

---

[1] We reject Eck's argument that defense counsel's concession was a structural deprivation of his right to counsel under U.S. v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). Cronic recognizes a narrow exception to the Strickland test, in which prejudice is presumed when " 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' " Bell v. Cone, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (quoting Cronic, 466 U.S. at 659). Eck contends defense counsel failed to subject the State's proof regarding the no-contact order violations to a meaningful adversarial test and effectively left him without counsel. But because defense counsel's concession was a legitimate trial tactic rather than a complete failure to contest the State's case, Cronic does not apply.