# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-01809-COA

**DENNIS DARNELL HOWARD A/K/A DENNIS D. HOWARD A/K/A DENNIS HOWARD**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2013 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DENNIS DARNELL HOWARD (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED: 04/07/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     In 2008, this Court affirmed Dennis Howard's conviction of armed robbery. *See Howard v. State*, 2 So. 3d 669 (Miss. Ct. App. 2008), *cert. denied*, 999 So. 2d 1280 (Miss. 2008).  Howard subsequently requested and received permission from the Mississippi Supreme Court to file a post-conviction relief (PCR) motion on the question of whether his trial counsel had prevented him from testifying in his own defense.

¶2.     At the evidentiary hearing, Howard testified that he had told his trial attorney he wanted to testify, but the attorney just ignored him and rested the case without calling

Howard to the stand. Howard claimed he was ignorant of the trial process and did not realize anything was amiss until it was too late. The circuit court found that Howard's story was not credible. It denied Howard's PCR motion, and he appeals.

## STANDARD OF REVIEW

¶3. When reviewing the denial of a PCR motion, an appellate court "will not disturb the trial court's factual findings unless they are found to be clearly erroneous." *Callins v. State*, 975 So. 2d 219, 222 (¶8) (Miss. 2008).

## DISCUSSION

¶4. The supreme court granted Howard permission for an evidentiary hearing based on his claims that he "was not permitted to testify on his own behalf" and "that his trial counsel prevented him from doing so." After the evidentiary hearing, the trial court found these allegations baseless. Howard enumerates five issues relating to procedural aspects of the hearing, which we have reorganized and consolidated into four issues for our analysis. We also address the dissent's concerns relating to the underlying merits of Howard's claim, although we find that issue procedurally barred because Howard does not argue it in his brief on appeal. We find no error and affirm.

### 1. Sua Sponte Subpoenas

¶5. Howard admits he did not subpoena his trial attorney to testify at the evidentiary hearing. He argues that the trial court should have subpoenaed the attorney for him on its own initiative, since the attorney would have been the only person able to confirm or deny

2

Howard's most important claims, specifically that the attorney never asked Howard whether he wanted to testify at his trial.

¶6. Howard cites no authority placing the responsibility for securing his witnesses on the trial court, nor are we aware of any. Instead, Howard had to call his own witnesses and prove his own case; "the burden of proof is on the petitioner to show by a preponderance of the evidence that he is entitled to relief." *Roach v. State*, 116 So. 3d 126, 131 (¶15) (Miss. 2013) (citations and internal quotation marks omitted); *see also* Miss. Code Ann. § 99-39-23(7) (Supp. 2014). Howard was entitled to subpoena witnesses, or he could have offered "proof by affidavits, depositions, oral testimony or other evidence." § 99-39-23(3)-(4).

¶7. Howard also should have, at the very least, made some effort to secure a statement from the attorney and presented it (or an explanation why he could not do so) with a motion for a new trial following the evidentiary hearing. *See King v. State*, 251 Miss. 161, 171-72, 168 So. 2d 637, 641 (1964).

¶8. It is true that Howard was pro se, but "[w]hile pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar." *Hardison v. State*, 94 So. 3d 1092, 1106 (¶48) (Miss. 2012) (citation and internal quotation marks omitted). We find no merit to this issue.

## 2. Scope of the Hearing

¶9. The Mississippi Supreme Court granted Howard leave to file his proposed PCR motion in the trial court. The supreme court's order specifically limited Howard's

permission to file a PCR motion to those "claims raised in his application [to the supreme court] and [proposed] motion." After Howard filed the motion, as proposed, he sought to amend it to include additional claims for relief – including challenges to jury instructions, the amendment of his indictment, ineffective assistance of counsel, and others. The trial court refused to allow these amendments and limited the evidentiary hearing to the claims made in the motion approved by the supreme court.

¶10. Howard was convicted after a trial, and his conviction was affirmed by this Court on appeal. "When a case is affirmed on direct appeal, permission from the Mississippi Supreme Court must be obtained in order to seek post-conviction relief in the circuit court." *Campbell v. State*, 75 So. 3d 1160, 1161-62 (¶7) (Miss. Ct. App. 2011) (citing Miss. Code Ann. § 99-39-7 (Supp. 2013)).

¶11. Howard contends that these issues are not subject to procedural bars because they implicate fundamental constitutional rights. Even if that were the case, the absence of leave from the supreme court is not a mere procedural bar; it is jurisdictional. *Id.* at 1162 (¶7). The trial court correctly found that it had no authority to go beyond the supreme court's order and consider Howard's additional issues. This issue is without merit.

### 3. Motions "to be Moved," for Appointment of Counsel, and for Continuance

¶12. Howard filed a motion "to be moved" to the Attala County Jail from the Mississippi State Penitentiary, where he was under "lockdown" for disciplinary infractions. According to Howard, his phone and visitation privileges had been revoked, and this impeded his ability

4

to prepare for the PCR hearing. But Howard does not specify anyone he was unable to contact or what he wanted to investigate. Instead, he seems to admit that the only other relevant witness would have been his attorney, whom Howard apparently did not pursue (supposedly under the mistaken belief that the trial judge would secure his appearance). Moreover, this claim does not appear to have been properly before the circuit court because there is no indication Howard had exhausted his administrative remedies with the Mississippi Department of Corrections. *See* Miss. Code Ann. § 47-5-803 (Rev. 2011). Howard has not shown that he could not prepare for the hearing from prison. We find no error in denying this motion.

¶13. Howard also requested appointed counsel. He acknowledges that there is no state or federal constitutional right to appointed counsel in post-conviction proceedings. *Moore v. State*, 587 So. 2d 1193, 1195 (Miss. 1991). Nonetheless, the trial court *may* appoint counsel to an indigent petitioner when an evidentiary hearing is required, but it is in the trial judge's discretion. *Id.* at 1195-96.

¶14. Howard might have benefitted from the presence of an attorney, but his claim was not particularly novel or complicated, nor did it require extensive investigation. Howard has failed to show the trial judge abused his discretion in denying the motion for appointed counsel.

¶15. Finally, Howard contends the trial court erred in denying his motion for a continuance. At the beginning of the hearing, Howard stated that he was ready to proceed. After some

argument and testimony, however, Howard asked the circuit court for a continuance to secure counsel. The court denied the request. On appeal, Howard contends that this was error. He faults the circuit court for waiting too long to deny his motion for appointment of counsel, and he complains of his difficulty investigating his case because of his discipline-related restrictions in prison.

¶16. "The denial of a last minute request for a continuance to retain new counsel is within the trial court's discretion." *Atterberry v. State*, 667 So. 2d 622, 629 (Miss. 1995). It will not be reversed on appeal unless the denial resulted in a "manifest injustice." *Stack v. State*, 860 So. 2d 687, 691 (¶7) (Miss. 2003). Moreover, the burden of showing a manifest injustice cannot be satisfied by conclusory arguments, but instead must be shown by "concrete facts" that "demonstrate . . . particular prejudice." *Id.* at 691-92 (¶7).

¶17. Howard has been seeking post-conviction relief for years. His PCR petition was filed with the circuit court more than four months before the hearing, and Howard had about ten days' notice before the hearing that the trial court had denied his request for a court-appointed attorney. After all that, Howard waited until the middle of the hearing to request a continuance. He has not shown any particular prejudice, much less a manifest injustice. We find no abuse of discretion.

### 4. Right to Appeal

¶18. Howard next contends that the trial court erred in not informing him he had a right to appeal its denial of his motion for post-conviction relief. Since Howard did appeal that

6

judgment, anyway, this issue is moot.

### 5. The Underlying Merits

¶19.     Although Howard obviously does not agree with the circuit court's decision on the merits of his claim, he does not identify this as a separate issue or attack the merits directly in his brief on appeal.  We are mindful that the Mississippi Supreme Court has "held that where a prisoner is proceeding pro se, we will take that into account and, in our discretion, credit not so well pleaded allegations so that a prisoner's meritorious complaint may not be lost because inartfully drafted." *Corrothers v. State*, 148 So. 3d 278, 314 (¶94) (Miss. 2014).  But the issue here is substance, not drafting.  Howard has not raised this issue, and thus it is waived.

¶20.     And even if there was no waiver, the circuit court was acting well within its discretion when it denied Howard's PCR motion on its merits.  Howard's  claim is that he intended to testify in his own defense, but his attorney prevented him from doing so.  This allegation was supported only by Howard's own testimony, and the trial judge found that Howard was not credible.  This was within the court's discretion as the finder of fact.  *See, e.g., City of Jackson v. Lipsey*, 834 So. 2d 687, 691 (¶14) (Miss. 2003).  Since Howard bore the burden of proof, but presented no credible evidence, his claim was properly denied on the merits.

¶21.     The dissent acknowledges that the circuit court, as the finder of fact, was entitled to reject Howard's testimony entirely.  Yet it would reverse his conviction anyway, finding that there must be "affirmative proof" Howard had waived his right to testify.

7

¶22. With respect to the dissent, there is affirmative proof in the record – Howard's attorney rested the case without calling Howard to testify. This occurred immediately after the trial judge explained to Howard, at length, that only he had the right to decide whether he would testify. The judge then allowed Howard and his attorney a private conference, after which Howard's attorney rested the case. The inference, which surely the trial court must be allowed to make, is that counsel was acting competently and faithfully. It is axiomatic that it must be presumed that counsel is competent and that his actions fall within the broad range of reasonable professional assistance. *See, e.g., Sea v. State*, 49 So. 3d 614, 628 (¶40) (Miss. 2010).

¶23. While we would concede that Howard's silence should not amount to an absolute waiver of his claim, the fact that Howard first made these allegations years after the trial was properly considered in deciding whether they were credible. The judge advised Howard of his right to testify, at great length and on the record:

> Q. You are Dennis Darnell Howard, the defendant in this case today, and, Mr. Howard, I want to advise you that under the Constitution – you can put your hand down now – under the Constitution of the United States and of the State of Mississippi, you've got a constitutional right to testify as a witness on your own behalf if you chose to do so. Do you understand that?
>
> A. Yes, sir.
>
> Q. Do you understand also that you've got the constitutional right to not testify if you choose not to testify?
>
> A. Yes, sir.
>
> Q. And do you understand that the decision as to whether to testify or not to

8

testify is your decision and yours alone?

A. Yes, sir.

Q. Do you understand if your lawyer wanted you to testify and you didn't want to, your lawyer could not force you to testify?

A. Yes, sir.

Q. Do you understand further that if you chose – wanted to testify and he thought you shouldn't testify, you could override his decision and you could testify even if he thought it was best for you not to. Do you understand that?

A. Yes, sir.

Q. So, in all aspects, the defense is totally controlled by you. Your lawyer can offer you advice, but, in the end, you make the decision to testify or not to testify. You also make the decision as to whether to call witnesses or not on your own behalf. Do you understand that?

A. Yes, sir.

The court then granted a short recess for Howard and his counsel to discuss whether Howard would testify, and immediately thereafter Howard's counsel rested. Howard sat silently through this – and the rest of the trial, including not one but two questions from the jury that were related to his decision not to testify.[1] Howard did not complain in his motion for a new trial, nor in his direct appeal of his conviction, nor in his first attempts at obtaining permission from the supreme court to seek post-conviction relief. As far as the record reveals, Howard did not make the claims now before us for years after the alleged wrong.

---

[1] The jury asked about representations made by Howard's attorney during his opening statement as to Howard's expected testimony of the events.

¶24. The Mississippi Supreme Court has held that a petitioner's silence can be taken as evidence that counsel was following his wishes. In *King v. State*, 679 So. 2d 208, 210-12 (Miss. 1996), the defendants claimed that their decision not to testify was conditioned on their attorneys calling other witnesses in their defense. The supreme court noted that, as in today's case, the trial judge had explained the Kings' right to testify at length, without directly asking whether they intended to testify. The court held:

> Given the knowledge that [then-Circuit] Judge Carlson had clearly and repeatedly conveyed to the Kings, when their counsel rested without putting on any witnesses, the Kings could and should have objected, if in fact their counsel was indeed guilty of such egregious conduct. There are several methods which could have been utilized by the Kings in accomplishing this feat, all out of the hearing of the jury. During the trial, by side bar conference, the Kings could have asked to approach the bench and directly conveyed their complaints to the trial judge. They could have asked to go to chambers to discuss this sensitive subject matter. When both sides commenced going over jury instructions, this was the ideal time to tell the trial court that they had been misled by counsel and they wanted to offer other witnesses, or alternatively, testify themselves. And yet, the Kings remained silent, letting this perfect opportunity to expose their counsel's supposed egregious ineffective assistance go by without a word. At that time the mistake, if indeed it was a mistake, was surely correctable by the trial court. All the Kings had to do was tell the trial court of their dilemma.

*Id.* at 210-11.

¶25. Admittedly, in *King* the trial judge had specifically invited the defendants to come to him if they felt their attorneys were denying them the right to testify. *Id.* at 210. The supreme court noted that fact, but it did not condition its holding on it. *See id.* at 210-11. In our case, the record reflects that Howard was willing and able to speak directly to the trial judge when required. Before the trial, Howard's counsel informed the judge that Howard

10

wanted to speak to him. Howard then personally requested a continuance to seek new representation. Although the court refused his request, the record gives no reason to suspect that Howard was afraid to speak to the judge directly or that counsel would or could have prevented him from doing so. Yet Howard remained silent after his attorney allegedly disregarded both his wishes and the instructions of the court.

¶26.   Courtroom decorum or fear of the judge cannot excuse this silence. Howard seems to admit as much; he claims that his problem was that he did not know *when* to stand up and say he wanted to testify. That might excuse his failure to speak up immediately – if the claim were not belied by the fact that the trial judge had described the trial procedure in detail, on the record, at the beginning of the trial, and had Howard not just watched the prosecution conclude its case by "resting."

¶27.   Even if we believed Howard's claims of ignorance, he surely would have noticed something was amiss at some point after his attorney rested the case – perhaps during the conference on jury instructions, or when the trial judge began instructing the jury by saying, "Members of the jury, you have heard all of the testimony . . . ." And then there were the "closing" arguments.

¶28.   Howard's claims of ignorance and obliviousness are hard to believe given that, during sentencing, his attorney represented that Howard was a college student studying computer engineering. Howard himself admits that, at some point, he began asking his attorney when he was going to testify – he claims the attorney just kept telling him to wait. This claim is

11

also difficult to accept, as the jury deliberated for more than three hours, giving Howard plenty of time to press the matter with his attorney or bring the matter to the attention of the judge. Two questions were submitted by the jury, both of which involved, to some degree, Howard's decision not to testify. Then a verdict of guilty was returned, and Howard was sentenced.

¶29.    Despite what he claims happened, Howard did not then fire his attorney; instead, the same attorney continued to represent Howard in his direct appeal of his conviction. *See Howard v. State*, 2 So. 3d 669 (Miss. Ct. App. 2008). Howard could have, but did not, raise this issue himself in a pro se brief on direct appeal. He actually filed a pro se petition for a writ of certiorari, in which he did not hesitate to attempt to raise new issues. Yet Howard was never heard to complain that his right to testify had been violated until his second motion seeking permission to file a PCR motion, years after the fact.

¶30.    Also, with respect to the dissent, we do not agree that the issue is whether Howard affirmatively waived his right to testify. The Mississippi Supreme Court has never held that there must be an "affirmative showing" that the defendant had waived his right to testify. Instead, "[t]he accused in a criminal case may waive his or her right to testify, either intentionally or by his or her conduct, as long as such waiver is knowingly and voluntarily made." 22A C.J.S. *Criminal Law* § 901 (2014). In *Culberson v. State*, 412 So. 2d 1184, 1186 (Miss. 1982), the seminal Mississippi case on this issue, the question was described as whether the trial court or defense counsel had *denied* the defendant the right to testify. In its

order granting Howard an evidentiary hearing on Howard's claims, the supreme court used the same language to describe them: "Howard claims he was not *permitted* to testify . . . . He argues his counsel *prevented* him from doing so." (Emphasis added). Howard himself admits that this is the relevant question.

¶31. Looking at how this issue is dealt with by other courts is instructive. Some treat the defendant's failure to personally object when his attorney rests as an absolute, irrefutable waiver. *See Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991) (surveying cases). A "handful" of jurisdictions take the opposite approach and require the trial judge to secure a personal, express waiver in every case. *Id.; State v. Walen*, 563 N.W.2d 742, 751 (Minn. 1997) (likewise).[2] Other courts, such as the Seventh Circuit in *Underwood*, take a third path, taking the defendant's acquiescence as prima facie proof that counsel was following his wishes but still allowing the defendant an opportunity to prove his counsel had somehow denied him the opportunity to testify. *Underwood*, 939 F.2d at 475-76. Mississippi falls squarely in this third category. *See Shelton v. State*, 445 So. 2d 844, 847 (Miss. 1984).

¶32. In courts taking the third approach, the defendant bears the burden of proof, for reasons the Seventh Circuit explained:

> There is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right that is not waivable by counsel) to testify in his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify,

---

[2] Both *Walen* and *Underwood* count Mississippi as always requiring an express waiver, based on a misreading of *Culberson*.

and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify."

*Underwood*, 939 F.2d at 475-76. It concluded:

The defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.

*Id.* at 476.

¶33. The dissent relies on *Dizon v. State*, 749 So. 2d 996 (Miss. 1999), a case it admits is not on all fours with this one. The facts of *Dizon* are very distinguishable – there, the allegations that counsel had prevented Dizon from testifying were credible. Dizon's attorney testified at the hearing and corroborated Dizon's claims. *Id.* at 999-1000 (¶¶16-18). The attorney admitted that he did not recall advising Dizon of his right to testify. *Id.* at 999 (¶16). He went so far as to concede that he had only "assumed" Dizon did not want to testify, based on a one-word response to an ambiguous question. *Id.* The holding of *Dizon* is simply that the defendant had met his burden of proof in showing that his attorney denied him the right to testify. *See Underwood*, 939 F.2d at 475-76.

¶34. What the dissent finds compelling about *Dizon* is the supreme court's closing admonitions that, when a defendant's attorney says in his opening statement that his client

14

will testify, the trial court "should" explain to the defendant that he has a right to testify and ask whether he intends to do so. *Id.* at 1000-01 (¶¶25-26).[3] We certainly agree with the dissent and the *Dizon* court that the trial judge *should* have obtained a direct and unimpeachable waiver from Howard himself. But the supreme court's language was advisory in nature; the *Dizon* court describes questioning by the judge as the "most prudent course of action" and rejects the contention that it has created a "a hard and fast due process procedural right which must be complied with in each case." *Id.*

¶35. That "should" in fact means *should* and not *must* is evidenced by our supreme court's original decision on this issue in *Culberson*, 412 So. 2d at 1186-87, which used the same language (emphasis added):

> We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant's waiver of his right to testify should ever arise in the future.

It had been argued that this created a blanket rule, but the supreme court has rejected that reading. *Shelton*, 445 So. 2d at 847 ("[I]n *Culberson* we merely suggested that trial judges inquire into whether or not the defendant desired to testify, and while that suggestion was

---

[3] We reiterate that in today's case, the trial judge did inform Howard of his right to testify. He just did not press the issue further and ask Howard whether he wanted to testify or not.

certainly strong, it was not mandatory.").

¶36. Other courts have explained that there are certain "exceptional, narrowly defined" circumstances under which a trial judge may be required to personally ask the defendant whether he intends to testify. *United States v. Pennycooke*, 65 F.3d 9, 12 (3d Cir. 1995). But we are unaware of any court requiring the trial judge to do so just because the attorney stated during his opening statement that he expected his client to testify. The Third Circuit cited the Seventh Circuit decision in *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir. 1998), as an example of sufficiently "exceptional" circumstances, where the defendant interrupted the proceedings to say he wanted to testify and claimed his attorney was "lying" when he said the defendant had decided not to testify. A similar situation occurred in *Spearman v. State*, 58 So. 3d 30, 34-35 (¶¶13-14) (Miss. Ct. App. 2011), where this Court found error after defense counsel rested his case *immediately* following the defendant's assertion to the court that he did, in fact, want to testify.

¶37. The Third Circuit concluded in *Pennycooke* that requiring the judge to ask the defendant directly "is the exception, not the rule. Where the trial court has no reason to believe that the defendant's own attorney is frustrating his or her desire to testify, a trial court has no affirmative duty to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right." *Pennycooke*, 65 F.3d at 13.

¶38. Today's case does not rise to the level of *Ortega* or *Spearman*. Howard did not ever personally state on the record that he intended to testify, and certainly not immediately before

16

his attorney rested the case, without any opportunity for him to have changed his mind, as was the case in *Spearman.* That Howard's attorney said during his opening statement that he expected Howard to testify does suggest that Howard intended to testify – at the time – but it also suggests with equal force that the attorney was going to let him do it if he wanted to. After hearing the State's limited proof and watching his attorney's aggressive cross-examination of the victim, Howard could easily have changed his mind. The Appeals Court of Massachusetts has explained why defendants often wait until the last minute to decide whether to testify:

> Unlike the broad strategic decision of waiving the right to trial by jury, which is made before trial begins, or pleading guilty, which is generally made before trial but, in all events, brings trial to an end, the decision whether the defendant shall take the stand is a tactical one. It is often reserved to await developments in the trial. Those developments may be such that taking the stand would be the lesser evil. Conversely, the trial's course may be such that the wiser maneuver is not to expose the defendant to cross-examination before a jury or to a recital of his prior convictions.

*Commonwealth v. Hennessey*, 502 N.E.2d 943, 947 (Mass. App. Ct. 1987) (footnotes omitted).

¶39. Another court has observed that the judge may be required to ask the defendant directly in instances where there could be "no rational explanation for the decision" not to testify. *Sexton v. French*, 163 F.3d 874, 882 n.8 (4th Cir. 1998) (citation omitted). In our case, as the trial judge noted in his findings following the evidentiary hearing, there were good reasons for Howard not to testify. Howard's intent was, as he outlined it at the evidentiary hearing, to admit to most of the allegations and defend himself against charges

17

of armed robbery by essentially admitting he had committed aggravated assault. Clearly a decision not to testify was at least rationally defensible.

¶40. We conclude that a challenge to the merits of the denial of the PCR motion was waived on appeal. In the alternative, the circuit court was acting within its discretion as the finder of fact when it denied Howard's motion.

¶41. **THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY JAMES, J.**

**IRVING, P.J., DISSENTING:**

¶42. I disagree with the majority and the circuit court that the record supports a finding that Howard waived his constitutional right to testify in his trial, as there is no evidence supporting such a finding—only speculation and surmise—and I cannot agree that a finding of waiver of such a substantial constitutional right can be predicated on pure speculation and surmise. Therefore, I dissent. However, before discussing in detail my reasons for doing so, I briefly address the majority's finding that Howard is procedurally barred from addressing the issue of waiver in this appeal.

¶43. The majority says that Howard has not raised on appeal the issue of whether the circuit court erred in finding no merit to his claim that his attorney denied him the right to

18

testify at Howard's trial. Howard's first issue is that the circuit court erred "by denying him relief on his 'right[-]to[-]testify' claim without compelling trial defense counsel to be at the evidentiary hearing." It is clear from Howard's statement of this first issue that he has generally raised as error the court's denial of his PCR motion that alleges he was denied his right to testify.

¶44. The majority acknowledges that our law is well settled that when "a prisoner is proceeding pro se, [appellate courts] take that fact into account and, in our discretion, credit not so well pleaded allegations to the end that a prisoner's meritorious complaint may not be lost because [it is] inartfully drafted." *Myers v. State*, 583 So. 2d 174, 176 (Miss. 1991) (internal citations omitted). Interestingly, the majority attempts to sidestep the command of this law by asserting: "But the issue here is substance, not drafting." Maj. Op. at (¶19). How was Howard to state the issue in his appellate brief without drafting the issue? That is exactly what he attempted to do in his first issue. While I agree that the literal wording of Howard's first issue suggests that the focus is the alleged error of the circuit court in not having required trial counsel to be present at the hearing. However, a thorough and in depth reading of Howard's brief compels the conclusion that Howard was simply trying to explain why the circuit court erred. In other words, in Howard's view, there was no evidence contradicting his testimony, and if the circuit court was unwilling to believe him, then the court should have required trial counsel to be present and testify differently.

¶45. It is not a fair reading of Howard's brief to conclude that he has not raised the issue

19

that the circuit court erred in finding that he waived his right to testify. Admittedly, Howard's issues are inartfully drafted and stray some from the singular issue that the supreme court allowed to be pursued, but in my judgment, as a pro se advocate, he has done remarkably well. I now turn to the discussion of my differences with the majority on the merits of Howard's claim that he was denied his constitutional right to testify and that the circuit court erred in finding that he waived that right.

¶46. On November 8, 2012, Howard filed his third application with the supreme court for leave to proceed with a PCR motion in the circuit court. In this application, he claimed, as he had done in previous applications, that his trial counsel had refused or failed to allow him to testify during Howard's trial. The Mississippi Supreme Court ordered the State to respond to Howard's application. The State responded that prior to the recess, following the State's case, the trial court informed Howard that he had a right to testify no matter his counsel's wishes. Therefore, according to the State, during the recess Howard must have informed his counsel that Howard did not want to testify because, otherwise, he would have interrupted the proceedings and informed the court that his counsel was preventing him from testifying.

¶47. After receiving the State's response, the supreme court granted leave to Howard to proceed with his PCR motion and ordered the circuit court to conduct an evidentiary hearing on Howard's PCR claim that his trial counsel refused or failed to allow him to testify in his trial. Howard proceeded pro se at the PCR hearing, and neither Howard nor the State called Howard's trial counsel as a witness. Howard explained that he asked his trial counsel to

20

come to the PCR hearing, but his trial counsel refused. While our law is clear that a movant in a PCR hearing shoulders the burden of proof, I find it difficult to understand why the State did not produce Howard's trial counsel to refute Howard's testimony if in fact Howard was not telling the truth about what had transpired during his trial.

¶48.　The only evidence presented at the hearing was Howard's testimony, the relevant portion of which I set forth verbatim as follows:

> **BY MR. HOWARD:** All right.  Excuse me.  Let me back up a minute.  I may be moving too fast for myself.
>
> On the day of trial, me and my attorney discussed me testifying.  He put you [(reference is to the circuit judge)] on notice during his opening statements that I wanted to testify.[4]  And during the trial, I'm thinking - - me and him talking - - I'm going to testify.  I tell him I want to testify and tell my side of the story.  He says okay.  The witnesses get on the stand, and they tell their side of the story.  We go to recess.  We come back and you - - you read me my rights about testifying.  And when you asked me did I want to make a motion, he interrupted me - -
>
> **BY THE COURT:** Actually, I wasn't addressing that to you.  I was

---

[4] During opening statements at Howard's trial, his lawyer made the following statement to the court and jury:

> This is the real story of what happened.  Earlier that day, Mr. Smith, Craig Smith, made a pass at Mr. Howard.  I mean, that's probably going to be uncontradicted.  My client's going to get up.  He said that night - - my client was offended.
>
> So he saw Mr. Smith that night.  My client's going to testify and he told the police that night that he saw Mr. Smith go to make the deposit.  Once he made the deposit, he walked up to him in a bad kind of way - - he was furious - - basically telling him, you know, "I'm not gay.  I am not homosexual, and he hit him.

21

addressing it to him. I was looking at him. Because procedurally, in order to preserve anything for appeal purposes - -

**BY MR. HOWARD**: Yes.

**BY THE COURT**: - - your lawyer has to move for a directed verdict when the State gets through putting on their case. It's a procedural thing where you can't raise any issue if you don't make that objection - - I mean, make that motion. So it's a procedural thing that was directed to him. I wasn't asking you if you had any motion to make.

**BY MR. HOWARD**: Okay. When he answered - - I guess in - - in my favor or whatnot, and he motioned for a directed verdict and you denied it, and we went to recess, Your Honor, I'm still under the impression - - I'm under oath; I'm going to get on the stand to testify to what allegedly happened.

**BY THE COURT**: What happened during that recess between you and your lawyer?

**BY MR. HOWARD**: I told him I wanted to get on the stand. This is what I told him. I told him I wanted to get on the stand to testify to what happened. And he said he was going to put me on the stand, Your Honor. And when we come back in the courtroom, he said he rest the case. And I'm trying to figure out why he ain't put me on the stand. Because like I said, I don't know what rests mean. So I'm thinking like, okay, well, if he ain't putting me on the stand, maybe I'm going to testify in just a little while. He's saying, Hold on. Hold on. And we recess again and go to lunch, Your Honor. When we come back from lunch, I don't come to the courtroom. By the time I come to the courtroom, y'all doing something about jury instructions. I don't know nothing about legal - - I'm still thinking I'm going to have an opportunity to get on the stand to tell my side of the story, Your Honor, because I'm the one that's able to tell the true side of what happened that day. So if I can't get on the stand and tell my side of the story, then the jury never hears my side. It only hears what the prosecution is offering.

Now, the jury go in - - they come out, and you give them the jury instructions, and they go in and start the verdict. I'm still thinking I'm going to testify until they come back with a verdict of guilty. I'm telling my attorney, Why can't I get on the stand? He's saying, Hold on. Hold on. I'm like, I need to get on the stand. Why can't I tell the judge what's going on? He's saying, Just hold

22

on a second. Just hold on. So I'm just doing what he's telling me not to do. I didn't know that I could have interrupted all the court procedures and stand up and say, Hey, hold up, I want to testify. I didn't know I could do that, Your Honor. If I knew that - - if I knew then what I know now, I would have testified immediately. I would have got up and did that. I didn't know that - - I was very unfamiliar with the law, with court procedure.

**BY THE COURT**: Well, then, tell me what you thought I was telling you  - - when I said, "You've got the right to testify even if your lawyer does not want you to, you've got the right to testify." What did you think I meant when I said that?

**BY MR. HOWARD**: I have - - I was - - I was completely dumbfounded - -

**BY THE COURT**: Did you not listen to that first instruction - -

**BY MR. HOWARD**: You didn't say - -

**BY THE COURT**: Listen to me.

**BY MR. HOWARD**: Okay.

**BY THE COURT**: When the trial first began, I read an instruction to this jury laying out the procedure that we were going to have throughout the trial. I told them that witnesses from both sides could be called. That at the conclusion of witnesses, we would go over jury instructions. The jury instructions would then be read to them. We would hear closing argument.

So you knew from the start because that - - I read that to the jury and you were sitting right there so you knew what the Court procedure was, didn't you, from my instructing the jury at the very beginning of the trial?

**BY MR. HOWARD**: No, I didn't - -

**BY THE COURT**: Were you not listening to that?

**BY MR. HOWARD**: I was unfamiliar with the law, Your Honor.

**BY THE COURT**: So was the jury. That's why I was educating them. But you were sitting there to hear the same thing they did - -

23

**BY MR. HOWARD**: The jury - -

**BY THE COURT**:  - - at the first of the trial.

**BY MR. HOWARD**: Your Honor, the jury wasn't on trial.  I was on trial, Your Honor.  And I really didn't understand the law at that time.  I mean, I didn't understand that -- that I could interrupt the jury -- interrupt the proceedings at any time and say Hey, I want - - I really didn't understand that, Your Honor.  I didn't understand that I had the right to stop.  You advised me of my rights, Your Honor, but you didn't explain to . . . me when I was supposed to testify.  You never explained that to me in the record or you didn't get it on record with me denying that I didn't want to testify.

**BY THE COURT:** Have you got any case law saying that's a requirement? Have you - - in all your mobile research, have you found anywhere the Court's required to go on record and have the defendant say, "Well, I do not want to testify"?

**BY MR. HOWARD**: Hold on just a second, Your Honor.

(PAUSE)

**BY MR. HOWARD:** Your Honor, I have a case, *Dizon v. State* - - it's a similar case to *Culberson v. State*, [412 So. 2d 1184 (Miss. 1982)]where it says that this Court suggested in *Culberson* that the trial judge question the defendant outside the presence of the jury regarding defendant's right to testify on his own behalf.  From review of the record, this would be the most prudent course of action for the judge to take.  Trial counsel stated during opening statements that Dizon would testify.  This in itself should have been enough to trigger an inquiry by the judge as whether or not it had been explained to Dizon that he had a constitutional right to testify and whether or not he had waived that right.

And it further says, "The dissent argues that we have today created a hard and fast due process procedural right which must be complied with in each case. We find that the judge was on notice that Dizon wanted to testify.  The judge should have erred on the side of caution and questioned Dizon according to *Culberson*.  In fact, the dissent even agrees that it would have been a better practice for the trial judge to follow the suggestion in *Culberson* and question Dizon then and there about his decision not to testify."  And this is *Dizon v.*

24

*State*, where his case was overturned. And his case is almost similar to mine. Your Honor.

**BY THE COURT REPORTER:** Can you give me that cite - - what's the first name?

**BY MR. HOWARD:** *Dizon d-i-z-o-n v. State,* 749 So. 2d 996 ([Miss.] 1999).

This case is - - and *Culberson* are similar to my case where it says that if the defendant wants to testify or doesn't wish to testify, that the Court should make record of it, Your Honor, so the question never arises in the future.

And Your Honor, I wanted to testify. I was the only one that was going to be able to refute the State's theory of what happened, of the alleged gun and of me attacking the victim or the fight or the events that took place that day. I wasn't awarded a fair trial, an opportunity to explain to the jury my confrontation with Craig Smith on the day in question, Your Honor.

All I was afforded was a day in court, and I wasn't given time - - I really wanted to tell my side of the story. I felt like the jury would have understood what went on that day through me and the other witnesses that the State used against me. She coincided with everything that I said, Your Honor. Mine and her statements were the same.

I never denied then. I never denied the attack, Your Honor. I never denied anything. All I ever did deny was me demanding money or taking money or hitting him with a gun, Your Honor. The only evidence of the crime I denied, Your Honor.

But as far as the assault part of it, I never denied that. I did assault him. I never denied that, Your Honor. I just wanted to get on the stand to be able to express that to the jury, Your Honor - -

**BY THE COURT:** That's probably why the lawyer advised you not to because if you would have gotten on the stand and admitted that you committed the crime of aggravated assault - -.

¶49. Based on this testimony, the circuit court denied Howard's PCR motion, making the following finding:

25

The court finds nothing before it other than Mr. Howard's seven-years-later-after-the-fact statement that he wanted to testify. But does not believe at the time of the trial that he desired to testify because the Court is of the opinion that if Mr. Howard had wanted to testify, he would have notified the Court at that time, having been advised by the Court of his right to do so.

So the court is of the opinion that because Mr. Howard did not raise that issue with the trial court and [has] not offered any proof other than his self-serving testimony today in support of his motion, the motion should be denied. And therefore, the motion is denied.

¶50. As argued by Howard at his PCR hearing, I believe this case is factually similar to *Dizon.* In *Dizon*, Edison Dizon claimed in a motion filed with the Mississippi Supreme Court, while his direct appeal was pending, that he had been denied his constitutional right to testify. The supreme court "remanded the case to the trial court for an evidentiary hearing on the issue of whether Dizon had been properly informed of and advised of his right to testify on his own behalf, and whether he had effectively waived that right under *Culberson*." *Dizon*, 749 So. 2d at 998 (¶10).

At the evidentiary hearing Dizon's trial attorney testified that he had talked with Dizon regarding what his testimony would be if he testified at trial. He testified that he could not definitively say that he had advised Dizon that he had a right to testify. After the State rested, trial counsel met with Dizon in a holding cell and discussed Dizon's family and military record and what he would testify to if put on the stand. Trial counsel stated:

And then, I think we just probably left it up in the air or either he decided that he was going to testify. I'm not sure which it was. But we came back up here and began trial again. And I leaned over to him and I said, Well, are you ready to do this? And he said no. So, I assumed from that, he'd changed his mind about testifying or made up his mind about whether he was going to testify or not. And so we rested at that point.

26

Trial counsel testified he had no doubt that Dizon had voluntarily waived his right to testify at the trial at the time the defense rested . . . .[, although] he could not say with certainty that he ever advised Dizon of his right to testify.

* * * *

Dizon definitively testified that he was never informed of his right to testify by trial counsel [and] that he spoke with his trial counsel a couple of times before trial and repeatedly told him that he wanted to testify.

*Id.* at 999-1000 (¶¶16-19).

¶51. In deciding that Dizon had been denied his constitutional right to testify, the *Dizon* court noted:

The judge was put on notice that Dizon wanted to testify. During opening statements, trial counsel told the jury that Dizon was not going to get on the witness stand and deny what happened. In fact, he would testify about what did actually happen when [the victim] was beaten.

* * * *

Trial counsel stated during opening statements that Dizon would testify. This in itself should have been enough to trigger an inquiry by the judge as to whether or not it had been explained to Dizon that he had a constitutional right to testify *and whether or not he had waived that right.*

*Id.* at 1000-01 (¶¶22, 25) (emphasis added).

¶52. In this case, just as in *Dizon*, Howard's trial lawyer stated during opening statements that Howard would testify, but this did not occur. I acknowledge that our case is not on all-fours with *Dizon*, as the issue in *Dizon* was twofold—whether Dizon had been fully advised of his constitutional right to testify and, if so, whether he had waived that right. I also acknowledge that the ruling in *Dizon* turned on the supreme court's finding that Dizon had

27

not been so advised, while in our case the sole issue is whether Howard waived his right to testify. There is no doubt that Howard knew he had a right to testify in his own defense, because the circuit judge clearly had advised him of that right. Nevertheless, I find that under the authority of *Dizon*, since the circuit judge had advised Howard of his right to testify and had heard Howard's counsel promise during opening statements that Howard would testify, the circuit judge should have inquired if Howard had elected to forgo his constitutional right to testify when Howard's attorney rested Howard's case without putting Howard on the witness stand as promised.

¶53. The majority states that the supreme court's unambiguous statement in *Dizon*—that trial counsel's opening statement that Dizon would testify should, in and of itself, have been enough to trigger an inquiry by the judge as to whether or not Dizon had waived that right—was advisory and that the *Dizon* court rejected the notion that, in *Culberson*, it had created a hard and fast due process procedural right which must be complied with in each case. I agree with the majority that the *Dizon* court, in response to Justice Smith's dissent asserting that the majority had created a hard and fast due process procedural right, rejected the dissent's characterization of what it had done. *Dizon*, 749 So. 2d 1000-01 (¶¶25-26). However, the majority fails to fully embrace what the *Dizon* court went on to say after responding to the mischaracterization of its holding by the dissent: "We find that the judge was on notice that Dizon wanted to testify. The judge should have erred on the side of caution and questioned Dizon according to *Culberson*." In *Culberson*, the supreme court had

28

stated:

> We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant's waiver of his right to testify should ever arise in the future.

*Culberson*, 412 So. 2d at 1186-87. Likewise, in this case, the circuit judge "should have erred on the side of caution and questioned" Howard as to whether he had waived his right to testify.

¶54. Further, I note that after conducting the evidentiary hearing on the issue of whether Howard had waived his right to testify, the circuit judge based his rejection of Howard's claim on his finding that Howard's testimony was not credible. I acknowledge that the circuit court has absolute discretion with respect to the credibility of witnesses and that it was well within its discretion to disbelieve Howard. The problem here, however, with the circuit judge's finding is that there is no evidence in the record contradicting Howard's version of what transpired. Therefore, there is no basis for the affirmative finding by the circuit judge that Howard waived his right to testify. It is of particular interest that the State, in its response to the supreme court, and the circuit court, at the conclusion of the PCR hearing, both concluded that if Howard had not waived his right to testify, he would have interrupted the proceedings and informed the court that his counsel was preventing him from testifying. This conclusion assumes that Howard was obligated to ignore proper courtroom

29

protocol—specifically, that a party who is represented by an attorney speaks to the court only through that attorney.

¶55. I should also note that the majority correctly points out that it was Howard's responsibility to produce witnesses to support his claim. But as Howard points out, there are only two individuals that know what happened, Howard and his attorney. So while the State did not have the responsibility to produce any witnesses at the PCR hearing, it seems to me that, if it wanted to prevail, it had a responsibility to refute, if indeed it could, the evidence that it knew Howard would offer. The State participated in the PCR hearing and did not offer anything to contradict Howard's testimony. So it is equally logical to assume that the State must have known that Howard's trial counsel's testimony would not have been helpful to the State. After all, as I have pointed out, the reasoning employed by the State at the PCR hearing apparently had been proved unconvincing with the supreme court. Finally, I should mention the obvious. Because Howard was serving a mandatory twenty-five-year sentence, he was limited in what he could get done in preparation for his PCR hearing. As to his failure to have his trial counsel present, he testified as follows: "But I've been trying to contact him, Your Honor, I've had my family try to contact him to get him to come to court and to be a witness in this case. And he told them that through [sic] such short notice he couldn't make it. Your Honor."

¶56. I conclude by noting that the facts here are unlike the facts in a typical PCR case, where the defendant seeks to contradict his prior sworn testimony. There is a plethora of

30

cases holding that a defendant's prior sworn testimony trumps his belated contradictory assertions in his PCR motion. Here, there is no prior sworn testimony by Howard stating that he did not want to testify at his trial. Therefore, I find that the circuit court erred in dismissing Howard's PCR motion, as it is clear that the record before us and the evidence produced at the PCR evidentiary hearing compel a finding that Howard was denied his constitutional right to testify at his trial. Consequently, I would reverse and render the judgment of the circuit court, vacate Howard's conviction and sentence, and restore this case to the active criminal docket of the Circuit Court of Attala County for further proceedings.

**JAMES, J., JOINS THIS OPINION IN PART.**